González *v.* San Juan Light & Transit Co.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª.

No. 563.—Resuelto en febrero 2, 1911.

Daños y Perjuicios Ocasionados por Culpa o Negligencia.—La acción establecida en el caso de autos, y que tiene por objeto reclamar una indemnización

por los daños y perjuicios que sufriera la demandante por la muerte de un hijo suyo, ocasionado por la culpa o negligencia de la compañía demandada, está autorizada por las disposiciones del artículo 1803 del Código Civil, que constituyen nuestro derecho substantivo en esta materia.

Id.—Daños que Pueden ser Indemnizados.—Solamente los daños que real y verdaderamente se hubieren causado, pueden ser indemnizados en estos casos, y por consiguiente, a fin de que la corte pueda determinar los daños sufridos por el demandante es necesario que se demuestre su verdadera existencia y se prueben los hechos que hayan de servir de base para fijar la cuantía de la indemnización.

Id.—Indemnización en los Casos en que la Víctima Hubiere Fallecido.—En aquellos casos, como el de autos, en que la madre ejercita la acción por la muerte de su hijo, la demandante sólo tiene derecho a ser indemnizada por los perjuicios sufridos a causa de la pérdida de los servicios de su hijo, y nunca tendría derecho a la indemnización, que el propio hijo hubiera podido reclamar a no haber fallecido, o que se derivara de las lesiones por él sufridas a causa del accidente. En estos casos la indemnización se extiende solamente a lo que el hijo acostumbrara a dar para el mantenimiento de su madre y de que ésta se viera privada a causa de su muerte.

Id.—Cuantía de la Indemnización.—A los efectos de fijar la cuantía de la indemnización a que se refiere el párrafo anterior, es necesario que se demuestre lo que el hijo estuviera ganando o acostumbraba ganar, pues de lo contrario el tribunal carecerá de base para estimar la existencia de los daños y perjuicios y determinar su cuantía.

Id.—Estatuto de Limitación—Prescripción.—Aun cuando las disposiciones vigentes en materia de prescripción se encuentran incluídas en el Código Civil, por lo que respecta a su aplicación a este caso, tienen un carácter adjetivo. La prescripción se diferencia de los estatutos de limitación, en que éstos afectan al procedimiento y no al derecho; su objeto es impedir que la parte pueda ejercitar su acción, y se inspiran en principios de orden público; mientras que la prescripción confiere un título o un derecho, especialmente en los casos de bienes inmuebles poseídos por un largo período de tiempo.

Id.—Interrupción de la Prescripción.—Las disposiciones del artículo 1874 del Código Civil no impiden que la prescripción vuelva a correr tan pronto como terminen los procedimientos judiciales por la acción voluntaria o negligente del demandante.

Id.—Abandono de la Acción o su Desestimación por Voluntad del Demandante.—La interrupción de la prescripción por el ejercicio de la acción judicial tiene lugar cuando el demandante prosigue su acción, hasta su terminación; pero si la abandona, desiste de ella o permite que se desestime, el efecto inmediato es como si tal acción no se hubiera entablado, restableciéndose entonces el *statu quo*, y computándose el término de prescripción desde que surgiera la causa de acción.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Eduardo Cautiño.*

Abogado del apelado: *Sr. Henry F. Hord.*

El Juez Asociado, Sr. MacLeary, emitió la opinión del tribunal.

Este es un recurso de apelación procedente de la Sección Primera de la Corte de Distrito de San Juan, por el que se trata de obtener la revocación de la sentencia dictada por dicha corte el 1°. de diciembre de 1909, a favor de la parte demandada. Esta acción se inició en la Corte de Distrito de San Juan por demanda formulada por Ramona González Soto, alegando que la compañía demandada, la San Juan Light & Transit Co., había ocasionado, por negligencia, la muerte de Juan Córdova Soto, hijo de la demandante, en el barrio de Santurce, entre las paradas 21 y 22 en la línea del trolley de la demandada, allá por el 2 de diciembre de 1904, no compareciendo el padre del muerto, como demandante, por haber fallecido después de la muerte de su hijo, pero con antelación a la presentación de la demanda.

Después de las demoras usuales en la preparación del caso, tuvo lugar la vista del mismo en la corte de distrito, el día 17 de noviembre de 1909, habiéndose presentado la prueba de la demandante, pero no la de la demandada, quien, a la conclusión de la prueba de la demandante, virtualmente excepcionó la prueba en una moción, solicitando que se dictara sentencia a su favor, fundándose en las siguientes razones:

"Primera. Que la demandante no ha probado haber sufrido daños por razón de la muerte de su hijo, Juan Córdova Soto.

"Segunda. Que de los hechos probados resulta que el caso fué un accidente inevitable.

"Tercera. Que de los hechos probados resulta que la muerte de Juan Córdova Soto, resultó de su propia culpa y negligencia.

"Cuarta. Que de los hechos probados resulta que esta acción está prescrita."

La corte consideró el caso y después de deliberar algunos días, dictó, el 1°. de diciembre de 1909, una sentencia a favor de la demandada, que en substancia dice así:

"Y la corte, tomando en consideración las alegaciones, la prueba de la parte demandante, la moción de la demandada y las argumentaciones de las partes sobre la misma, y por los motivos que aparecen de la opinión que para este caso se redacta, declara que los hechos y la ley están en contra de la parte demandante y a favor de la demandada, en cuanto aquélla no ha justificado la existencia de daños y su cuantía, y por tanto, que por ese motivo Ramona González Soto, dicha demandante, no tiene derecho a recobrar ni obtener nada de la parte demandada por virtud de la muerte de Juan Córdova Soto, hijo de la demandante, ocurrida en dos de diciembre de mil novecientos cuatro, y causada por un carro eléctrico de la compañía demandada."

Los motivos segundo y tercero, en que la demandada funda su pretensión de obtener un fallo a su favor, no son sostenidos por las pruebas que preponderan en cuanto a estos puntos a favor de la demandante; así es que no haremos caso de los mismos, y pasaremos sin más discusión, a los motivos primero y cuarto, alegados asimismo por la demandada.

Es evidente que esta decisión de la corte sentenciadora se basó enteramente en el primer fundamento presentado por la demandada en su moción, el cual vamos a considerar.

Como materia de daños, se alegó substancialmente por la demandante que dicho Juan Córdova Soto se ganaba con su trabajo hasta la suma de dos pesos por día y atendía a la subsistencia de sus padres; y que tal suma de dos pesos diarios, representaba la renta de un capital de seis mil pesos, al tipo del uno por ciento mensual, de cuya renta quedó privada la demandante, madre del muchacho por la muerte de éste, ocasionada por el descuido de la compañía demandada.

En cuanto a la prueba presentada por la demandante respecto a los daños y perjuicios, se demostró por ella que por algún tiempo anterior a la muerte del muchacho, Juan Córdova Soto, éste estuvo empleado en la casa Mora y Fresas, de Arecibo, pero con qué sueldo no resultaba de la prueba; y además se demostró que durante trece días con anterioridad a su muerte, estuvo en San Juan, sin que se demostrara en qué estuviera empleado durante su estancia en esta ciudad ni qué cantidad ganaba, si es que ganaba algo. Ni resulta de

las pruebas, que la demandante derivara beneficio alguno de la paga del muchacho que fué muerto, ni que éste contribuyera con cosa alguna a su manutención, cualquiera que haya sido el importe de su paga en cualquiera época.

Cuando ocurrió el accidente que causó la muerte del muchacho Juan Córdova Soto, vivían sus padres; pero su madre, Ramona González Soto, es la única demandante en esta acción, no figurando como actor, juntamente con ella, su marido, y padre del muchacho, por haber fallecido poco tiempo después de la muerte de éste, y antes de haberse entablado este pleito. Hemos consignado dicho primer fundamento alegado para conseguir la revocación de la sentencia, en la forma que ha sido expresado por el abogado de la demandada; pero, quizás también pudiera habérsele consignado más claramente, como sigue: "Aún en el supuesto de que la demandante hubiera justificado que la muerte de su hijo había sido causada por la negligencia de la compañía demandada, ¿podría concedérsele una indemnización por daños y perjuicios, sin haberse demostrado mediante pruebas la existencia y cuantía de los mismos?"

Nuestro Código Civil vigente dice lo siguiente en su artículo 1803:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

De modo que la reclamación de la demandante en el presente caso, se halla al amparo de este precepto legal que le reconoce el derecho de que se le repare por la demandada el daño causado a ella, por la muerte de su hijo, si dicha muerte fué causada por algún acto u omisión de dicha compañía en que intervino culpa o negligencia.

Este es nuestro derecho substantivo en materia de indemnización de daños y perjuicios, y de acuerdo con sus disposiciones, según se interpretan por la jurisprudencia vigente, es que deben los tribunales resolver las cuestiones que se los sometan para su resolución; y por tanto, la demandante tiene

derecho, en casos en que intervenga culpa o negligencia por
parte de la compañía demandada, a recobrar de ésta, los daños
y perjuicios que realmente le hayan sido causados, cuales-
quiera que fueren.

En el dictamen del juez sentenciador, se discuten seis de-
cisiones del Tribunal Supremo de España, como comentarios
al artículo 1804 del Código Civil. Cinco de dichos casos, se
refieren a indemnizaciones por incumplimiento de contrato y
casos análogos, y no son aplicables a casos de agravio (*tort*),
como el presente. Una de dichas decisiones está basada en
hechos semejantes a los del caso de que se trata, y no sostiene
la proposición enunciada por el tribunal inferior, en cuanto
a la interpretación de la ley; y es la decisión dictada en 14 de
diciembre de 1894, que ha sido ampliamente discutida por este
tribunal, en la opinión emitida recientemente en el caso de
*Alejandro Díaz* v. *San Juan Light & Transit Co.*, a la cual
hacemos referencia. Nos vemos obligados a seguir la doc-
trina enunciada en este último caso, fundada como está, no
solamente en el caso español citado, sino también en la de-
cisión dictada por este tribunal, el 20 de abril de 1909, en el
caso de *Rafael Zalduondo* v. *Máximo Sánchez* en la que se
sigue la doctrina de la Jurisprudencia Americana. Así es
que, aunque aprobamos el fallo dictado por el tribunal sen-
tenciador a favor de la apelada, en el presente caso, no apro-
bamos las razones en que está basado.

Como se ve, esta jurisprudencia está en concordancia con
el precepto legal del Código, de que no pueden concederse sino
aquellos daños que han sido realmente causados, y por tanto,
para que el tribunal pueda estimar qué daños han sido causa-
dos, ha de demostrarse la existencia real de los daños, y los
hechos correspondientes de los cuales el tribunal pueda dedu-
cir la cuantía de los mismos.

Desde luego, la demandante hace la reclamación sola para
sí por la pérdida pecuniaria sufrida por ella a consecuencia
de la muerte de su hijo, y no reclama el propio hijo por haber
muerto; de donde se desprende que la madre nunca hubiera

tenido derecho a otra indemnización que la de los daños y perjuicios provenientes de la pérdida de los servicios de su hijo, y nunca a la que él mismo hubiera podido reclamar, en caso de no haber fallecido; por las lesiones que él mismo sufriera a consecuencia del accidente. Los daños y perjuicios que, en el presente caso, darían a la demandante derecho a un fallo contra la demandada, consisten solamente en la pérdida de la manutención, o contribución a la misma, que el hijo estaba acostumbrado a dar a la madre, de lo que él ganaba, y de cuya manutención o contribución, haya sido privada por la muerte de dicho hijo. Mas ¿sostiene la prueba que ha presentado la parte demandante, su pretensión de resarcirse de tales daños y perjuicios? Entendemos que nó, porque no ha demostrado que efectivamente su hijo ganara la cantidad que alega en la demanda ni ninguna otra, ni cuánto ganaba él con su trabajo en Arecibo o en San Juan durante los días que precedieron inmediatamente a su muerte, o en cualquiera época. Y entendemos que este requisito es necesario, porque declarando el Código Civil que pueden recobrarse los daños y perjuicios causados, han de probarse los daños y perjuicios causados a la demandante, para que el juez sentenciador tenga datos en que basar su sentencia.

En este pleito no se ha traído prueba alguna sobre estos particulares. El único hecho probado con respecto a este punto, es que Juan Córdova Soto fué muerto por una colisión con un carro del trolley; que él ganaba algo anteriormente cuando estaba en Arecibo; no se ha demostrado en qué se ocupaba, ni cuanto dinero ganó mientras estuvo allí, ni mientras estuvo en San Juan, ni se ha demostrado que su madre haya derivado beneficio alguno de lo que él ganaba; y con esta prueba la corte no puede entender justificada la cuantía de los daños y perjuicios ni aún la existencia de los mismos. No se ha demostrado que la muerte de su hijo haya causado perjuicios materiales o pecuniarios a la madre, la demandante en este caso, ni la cuantía de ellos.

Falta, por tanto, un requisito esencial para una sentencia

condenatoria contra la compañía demandada, y aún en el su-
puesto de que tuviera acción por daños y perjuicios por negli-
gencia de la compañía con la muerte del muchacho, no podría-
mos condenar a la compañía demandada por falta de pruebas
en cuanto a las pérdidas pecuniarias sufridas, y de los hechos
de que ha de deducirse la cuantía de las mismas. Por lo tan-
to, la moción de la demandada, solicitando sentencia a su
favor, por este primer motivo, fué propiamente declarada
con lugar.

La sentencia podría sostenerse por este solo fundamento;
pero también es evidente que la sentencia podría confirmarse
por el fundamento cuarto consignado por la demandada en su
excepción previa a la prueba, a saber: que la acción quedaba
extinguida por la ley de prescripción, o, como se dice en la
moción, había prescrito.

No obstante el hecho de que nuestra ley de prescripción o
"statute of limitations" está englobada en el Código Civil,
sin embargo, en cuanto es aplicable al presente caso, forma
parte evidentemente de nuestra ley adjetiva o de procedi-
mientos. "Statutes of limitations" sólo afectan al remedio
pero no a los derechos.

Existe cierta diferencia entre *"limitation"* y *"prescrip-
tion."* Los *"statutes of limitations"* tan comunes en el sis-
tema judicial americano, están generalmente basados en el
primitivo estatuto inglés votado en el año 1623 (21 Jac. I. C.
16), y no tenían por objeto afectar el derecho del demandante
a su acción, sino privarle del remedio, trascurrido cierto tiem-
po solamente en beneficio de la paz y tranquilidad pública.
*"Prescription"* confiere un derecho o título, especialmente en
cuanto se refiere a la propiedad inmueble en manos de
un individuo, por un largo período de años, o a una servi-
dumbre sobre la misma. Tuvo su origen en el derecho civil,
y se deriva de las leyes españolas "Las Partidas." Se en-
cuentra en los Códigos de Louisiana, y con sujeción a los mis-
mos, tiene en muchos casos los mismos efectos con respecto
a acciones personales que los *"statutes of limitations"* tienen

en otros' Estados. Véase el tomo 33 del *"Century Digest,"* bajo el epígrafe *"Limitation of Actions,"* artículo 577, columna 1012, que cita varias decisiones de los tribunales de Louisiana, donde hay vigente un Código Civil semejante al que tenemos en Puerto Rico. En la *"Cyclopedia of Law and Procedure,"* la diferencia entre los dos términos *"limitation"* y *"prescription"* está claramente establecida en palabras tan adecuadas, que las vamos a citar a continuación.

"Según algunos escritores el término *'prescription'* incluye los dos sentidos en que se ha usado el término *'limitation';* es decir, en el sentido de conferir un derecho, y en el de meramente privar de un remedio. Sin embargo, por otro lado, la diferencia entre *'a statute of limitations'* y *'the law of prescription'* se ha dicho que consiste generalmente en que: el primero priva de un remedio y el segundo confiere un derecho. Pero *'prescription'* y *'limitation'* son términos recíprocos en cuanto se refieren a servidumbres, o según se ha resuelto, por lo que respecta a títulos de propiedad, o por lo menos por lo que respecta a títulos de propiedad de bienes inmuebles." (25 Cyc., 984.)

Esta proposición está sostenida en el texto "Angell on Limitations," artículos 1 y 2, y en los dictámenes emitidos en los siguientes casos:

*Campbell* v. *Holt,* 115 U. S., 622.
*Alhambra Addition Water Co.* v. *Richardson,* 72 Cal., 598.
*Churchill* v. *Louis,* 135 Cal., 608.

Nuestro Código Civil, en su artículo 1831, dice:

"Por la prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales.

"También se extinguen del propio modo por la prescripción los derechos y las acciones, de cualquier clase que sean."

En ciertos casos, el *derecho* parece extinguirse, y en otros, las *acciones* se extinguen por prescripción. Así, en acciones personales, entabladas con motivo de agravios (*torts*) o en cobro de deudas. y casos análogos, *"prescription"* es virtual-

mente la misma cosa que *"limitation"* en el sistema americano.

El derecho a obtener una indemnización por los daños y perjuicios sufridos, pudiera desprenderse claramente de la prueba; mas, si la demandante no iniciara su acción dentro del tiempo prescrito por la ley, los tribunales se verían imposibilitados de concederle el remedio, si dicho estatuto se invocara por la parte demandada, en su alegación.

El muchacho fué muerto el día 2 de diciembre de 1904; y la demandante, su madre, entabló un pleito contra la compañía del trolley, pidiendo indemnización por la muerte de su hijo, el día 15 de noviembre de 1905; diez y siete días antes de concluirse el año fijado por la ley de prescripción. El día 20 de septiembre de 1907, casi dos años más tarde, esta acción fué desestimada por falta de instancia, habiendo dejado de comparecer la demandante. El 10 de septiembre de 1908, o sea diez días antes de cumplirse un año desde esa fecha, fué entablada esta acción con motivo de los mismos hechos, y entre las mismas partes.

Bajo tres aspectos diferentes puede considerarse la cuestión de prescripción o *"limitation,"*—cualquiera que sea el término que se use—basándose en dichos hechos.

1. Que habiéndose interrumpido la prescripción por haberse ejercitado la primera acción, el tiempo solamente empieza a contarse desde la fecha de su desestimación, el 20 de septiembre de 1907, y que, por consiguiente, los doce meses no habían transcurrido al presentarse la demanda, el 10 de septiembre de 1908.

2. Que la primera acción sólo suspendió los efectos de la ley de prescripción durante el tiempo en que estuvo pendiente en el calendario, es decir, desde el 15 de noviembre de 1905 hasta el 20 de septiembre de 1907, un período de veinte y dos meses y cinco días, y que por lo tanto, transcurrieron un año, nueve meses y tres días, durante los cuales no hubo acción pendiente, entre la fecha en que se originó la causa de acción

y la presentación de la demanda, y como consecuencia, la acción se había extinguido.

3. Que habiéndose desestimado la primera acción debido a la negligencia de la demandada, dicha acción no tenía ningún efecto sobre el término de la prescripción; y, por lo tanto, habían transcurrido cuatro años, siete meses y ocho días, durante los cuales pudo haberse entablado un pleito, sin que la demandante hubiera practicado ninguna diligencia eficaz, y en su consecuencia, la acción se había extinguido.

El párrafo 2 del artículo 1869 de nuestro Código Civil, dispone que las acciones como la que nos ocupa, prescriben en el transcurso de un año. Y por el artículo 1874 del Código Civil, se dispone que "La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, etc. * * *." Pero esto no impide que el tiempo empiece a transcurrir de nuevo, al cesar los procedimientos ante los tribunales, por la acción voluntaria, o por la negligencia de la parte demandante. En el artículo 1847, del Código Civil, se dispone, que la citación judicial se considerará no hecha, y dejará de interrumpir los efectos de la ley de prescripción, en tres casos, el *primero* de los cuales no es aplicable a este asunto; siendo el *segundo* de ellos, cuando el actor retire la demanda, o deje caducar la instancia; y el *tercero* es aplicable solamente a acciones sobre derechos reales. La segunda cláusula de este artículo parece que se relaciona con el caso de autos en el cual la demandante dejó caducar la instancia, y virtualmente retiró la demanda; pero el Tribunal Supremo de España ha interpretado este artículo del Código Civil, y ha declarado que el acto de entablar un pleito constituye una interrupción del término de la prescripción, en vez de producir una mera suspensión, como pudiera suponerse. Dicho Alto Tribunal declara que estos artículos del Código Civil deben harmonizarse con el 419 de la Ley Española de Enjuiciamiento Civil, que dispone que el hecho de haber caducado el primer procedimiento, no extingue la acción; sino que en el caso de que la acción no haya prescrito con arreglo a la ley, podrá ejer-

citársela en el correspondiente procedimiento judicial. (Véase la sentencia del Tribunal Supremo de España, de 4 de enero de 1901, y 9 Jurisprudencia del Código Civil, págs. 119 y 120.) Los comentarios de Manresa referentes al artículo 1946 son en el mismo sentido. El dice: "La interrupción de la prescripción extintiva se produce eficazmente, desde luego, con la presentación o interposición de la demanda o con cualquier otro acto en que sea ejercitada la acción que hubiera de ser prescrita en otro caso, y en su virtud, habrá que empezar a contarse de nuevo el término cuando cesen los efectos de dicho ejercicio, ya por abandono o desistimiento voluntario del actor, ya por caducidad de la instancia, ya por sentencia recaída en el juicio, sin que pueda acumularse en ningún caso el tiempo anterior a la interrupción, al que transcurriere después de ella." (12 Manresa, Comentarios al Código Civil, pág. 884.) Por consiguiente, el primer aspecto mencionado anteriormente es el que está de acuerdo con nuestro Código; y si lo aplicamos así, según la jurisprudencia española, no debe extinguirse la acción.

No obstante la doctrina sentada por el Tribunal Supremo de España, y la opinión del comentarista Manresa, resolveremos esta cuestión legal, de acuerdo con los principios bien establecidos en la Jurisprudencia Americana; porque en nuestra opinión, como jueces, encontramos estos últimos más en harmonía con la equidad y la justicia, y con el espíritu de la misma ley.

El tercero y último aspecto es, en nuestro parecer, el correcto y el que está apoyado por las autoridades americanas.

Citaremos los siguientes preceptos legales que, en nuestra opinión son aplicables al caso, y de decisiva influencia sobre el asunto en cuestión:

"Cuando se hubiere entablado algún procedimiento legal para hacer valer un derecho, con respecto al cual la prescripción aun no ha tenido lugar, cualquiera que sea el período de tiempo transcurrido después de haberse incoado tal procedimiento, no constituirá obstáculo para exigir el cumplimiento de aquel derecho. El hecho de que la

sentencia que recaiga en la acción, no se dicte hasta después de haber transcurrido el término fijado para la prescripción, no alterará el principio establecido.'" (25 Cyc., p. 1288.)

"Pero si el demandante pierde su acción, o si habiéndola ganado, la sentencia queda sin efecto o deja de ser ejecutoria por cualquier razón, entonces permanecerán las cosas en el mismo estado en que estarían si la acción nunca se hubiera entablado." (25 Cyc., p. 1289.)

"Aún cuando se ha resuelto que el establecimiento real y verdadero de un pleito es suficiente para suspender los efectos de la ley de prescripción, sin consideración alguna que se refiera o que dependa de las diligencias que en su prosecución ejercite con posterioridad el demandante, parece bien establecido que si un pleito se abandona voluntariamente, o se desestima, o se deja de instar por un período considerable de tiempo, no se suspenderán los efectos de la citada ley." (25 Cyc., p. 1290.)

Cuando un demandante prosigue una acción hasta su terminación, tal prosecución es la interrupción de que habla la ley. Sin embargo, cuando el demandante abandona su acción, deja de ejercitarla, o da lugar o permite la desestimación de la misma, la situación que resulta es como si nunca se hubiese entablado la acción. Queda restablecido el *statu quo,* y la prescripción sigue su curso desde la época en que surgió la causa de acción, habiendo sido simplemente suspendida en el interin. La ley tiene por objeto la tranquilidad de la sociedad, y no puede molestarse al demandado con acciones inconexas y no continuadas con constancia y resolución. El caso es distinto cuando el demandante prosigue la acción, causando una verdadera interrupción.

El Tribunal Supremo de Missouri, en 1895, después de admitir que la causa de acción estuvo suspendida durante la pendencia de una acción seguida con éxito y mientras la sentencia era ejecutoria, dice: "Desde luego, que si el demandante hubiera perdido su acción reivindicatoria, o si habiéndola ganado, la sentencia hubiera prescrito, o, por cualquier motivo, hubiera dejado de tener efecto, entonces la posesión continuaría en el mismo estado como si la acción no se hubiera nunca entablado."

*Snell v. Harrison*, 52 Am. St. Rep., 646.

Y del mismo parecer son los Tribunales Federales, como lo demuestran sus decisiones. El Tribunal de Circuito de los Estados Unidos, por conducto del Juez Sr. Story, dice: "Una acción que ha sido entablada, y que luego ha dejado de instarse, no aprovechará al demandante en otra acción, aún cuando se ejercitara ante el mismo tribunal y con motivo de la misma causa de acción."

*Delaplaine v. Crowninshield*, 7 Fed. Cases, No. 3756, p. 388.

En el mismo sentido se expresa la decisión en el caso de *Clark v. Hackett*, 5 Fed. Cases, No. 2823, p. 879. Este caso fué confirmado por el Tribunal Supremo de los Estados Unidos, (66 U. S., 77), mas sin hacer referencia a la cuestión de prescripción.

Por lo tanto, es claro que la causa de acción, por buena que haya sido en los comienzos, se extinguió por prescripción y la causa fué justamente desestimada. Debe, por consiguiente, confirmarse la sentencia de la corte de distrito.

*Confirmada.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

El Juez Presidente, Sr. Hernández, y Asociado, Sr. Aldrey, no intervinieron en la resolución de este caso.