Luis Izquierdo, demandante y apelante, *v.* Celestino Andrade, hoy sus hijos, Martín, Alejandrina, Margot, Dolores, Matilde y Sinesia Andrade, demandados y apelados.

No. 5375.—*Sometido:* Mayo 11, 1932. *Resuelto:* Marzo 17, 1933.

*E. Martínez Rivera,* abogado del apelante; *Adrián Agosto,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Por segunda vez viene este pleito ante este tribunal. La primera fué fallado sobre las alegaciones. La corte de distrito decidiendo una excepción previa resolvió que no habiéndose hecho parte en el pleito al dueño del vehículo, ni alegándose que estuviera en él al ocurrir el accidente; y que no siendo tampoco el demandado dueño del carro, ni alegándose que iba en él, y no alegándose que el automóvil fuera público, el demandante carecía de acción para reclamar los daños y perjuicios que sufriera a virtud de un accidente ocasionado por el carro en cuestión guiado negligentemente por una persona por encargo del demandado. Resolviendo el recurso esta Corte Suprema revocó la sentencia apelada ordenando que la resolución declarando con lugar la excepción previa se enmendara en el sentido de permitir una enmienda a la de-

manda dentro de diez días de radicado el mandato en la corte inferior.

Del resumen de la decisión de esta Corte que se encuentra reportada en 39 D.P.R. 938, transcribimos lo que sigue:

"En acción de daños y perjuicios con motivo de un accidente de automóvil ocasionado por la negligencia del chauffeur empleado por el demandado, como comodatario, el dueño del vehículo no es una parte necesaria en dicha acción.

"En acción de daños y perjuicios con motivo de un accidente de automóvil ocasionado por la negligencia del chauffeur empleado por el demandado, como comodatario, la presencia del dueño del vehículo, en el carro, al ocurrir el accidente, no es un factor esencial en la causa de acción del demandante.

"La propiedad de una empresa en relación con la cual se utiliza un vehículo, y no la propiedad del carro, es lo que determina la responsabilidad del demandado—ya sea dueño o comodatario— por los daños y perjuicios ocasionados por la negligencia de un empleado—chauffeur—; la responsabilidad no siempre depende del carácter público del carro, sino que puede ser de si éste se usaba o no para fines de negocio o en relación con una empresa."

Solicitada reconsideración, se negó por las siguientes razones:

"El apelante solicita la reconsideración por el fundamento de que el presente caso debe regirse por el artículo 60 del Código de Enjuiciamiento Civil y no por el 1804 del Código Civil. Hubo alguna argumentación respecto a este extremo en el alegato y durante la vista, pero tal como se presentó la cuestión no se precisó una discusión seria. Los únicos casos en que se descansaba fueron y son Román v. Vázquez, 29 D.P.R. 791, y Orta v. P. R. Railway, Light & Power Co., 36 D.P.R. 743. No estamos preparados por el momento para resolver que el artículo 60 del Código de Enjuiciamiento Civil establece una nueva regla de *respondeat superior*. La opinión en el caso de Orta v. P. R. Railway, Light & Power Co. tiende a sostener el criterio contrario y no está en conflicto con nada de lo dicho en el caso de Román.

"Debe declararse sin lugar la moción."

Devuelto el pleito a la corte de distrito, se enmendó la demanda. Contestó el demandado. Celebróse el juicio y otra vez se dictó sentencia en contra del demandante y éste apeló.

De la relación del caso y opinión de la corte sentenciadora transcribimos lo que sigue:

"Como resultado de las admisiones hechas y como resultado de la evidencia introducida, la corte declara probados los siguientes hechos:

"Allá por el día 26 de abril de 1928, Joaquín Morales, dueño de un automóvil 'Cadillac', se lo prestó a Celestino Andrade (causante de los demandados). Celestino Andrade mandó a Reyes Ríos Cabán (chauffeur autorizado) que guiara dicho vehículo, conduciendo dentro de él a Julia Mestre (concubina de Andrade) y a una sobrina de éste desde San Juan a Arecibo en viaje de ida y vuelta, con el único y exclusivo fin de ir donde una espiritista a buscar aguas curativas para uso personal de Celestino Andrade.

"Celestino Andrade era, entonces, contratista de ciertas obras que se realizaban en la escuela 'José Celso Barbosa,' de San Juan, y en dicha obra, y bajo las órdenes de Andrade y pagados por él, trabajaban los antes mencionados Joaquín Morales (como carpintero) y Reyes Ríos Cabán (como auxiliar).

"Cuando el referido 'Cadillac', guiado por Reyes Ríos Cabán, regresaba de Arecibo, al entrar en el pueblo de Bayamón, y debido a la negligencia del referido chauffeur Ríos Cabán, arrolló al niño Luis Izquierdo, hijo legítimo del demandante, falleciendo el niño Luis a consecuencia del accidente, nueve (9) días después de ocurrido el mismo.

"Se ha probado que el niño Luis Izquierdo era completamente saludable y estaba en primer grado en una escuela; y que el demandante Luis Izquierdo, con motivo del accidente perdió a su hijo Luis; se le enfermó su mujer; a causa de la enfermedad de ésta, que le provino como consecuencia del accidente, murió una hijita del demandante a la que daba todavía de mamar la madre; tuvo que gastar el demandante en médico y medicinas; perdió su trabajo en que ganaba $24 por semana y experimentó grandes sufrimientos morales.

"Si esta acción fuera dirigida contra el chauffeur Reyes Ríos Cabán, no tendría esta Corte nada más que dictar una sentencia immediatamente contra él.

"Pero la demanda va dirigida contra Celestino Andrade (hoy su sucesión) y tenemos que resolver si Celestino debe responder por la negligencia del chauffeur Ríos Cabán.

"Ésta es la cuestión primordial a resolver en el presente caso. Y a resolverla vamos.

"No cabe duda alguna que Celestino Andrade era el dueño de

la empresa de las obras de construcción que se realizaban en la escuela 'Doctor Barbosa'. Pero, se ha probado, más allá de toda duda razonable, que el viaje de San Juan a Arecibo fué 'con el único y exclusivo fin de ir donde una espiritista a buscar aguas curativas para uso personal de Celestino Andrade.'

"Con esos hechos probados no hemos podido llegar sino a la siguiente conclusión: 'Que Celestino Andrade no envió a su concubina y chauffeur en gestiones de negocios a Arecibo y que el carro 'Cadillac' no fué usado en relación con el negocio del demandado ni en llevar a cabo un asunto mercantil o una empresa, al ocurrir el accidente. Y para llegar con firme convencimiento a esa conclusión, hemos estudiado muy cuidadosamente la doctrina expuesta por la Corte Suprema de Puerto Rico en el caso Candal vs. Sociedad Auxilio Mutuo, 37 D.P.R. 886, que copiada literalmente es como sigue:

" 'De acuerdo con la ley según está ahora en vigor, un hombre de negocios que pide por teléfono que le traigan su carro no sería responsable de daños y perjuicios ocasionados por la negligencia de su empleado, el conductor, mientras éste se dirige a la ciudad en cumplimiento de lo solicitado en la llamada. Pero si el mismo carro, mientras no está siendo utilizado por el mismo dueño, se utiliza para efectuar entregas en conexión con el negocio del dueño, y ocurre un accidente debido a la negligencia del conductor mientras el vehículo está siendo así usado, entonces el dueño es responsable. Si el dueño de una central azucarera envía su carro privado con un chauffeur acompañado de un inspector de caña en un viaje de inspección por las fincas de los colonos que sean partes en contratos de molienda o de refacción agrícola efectuados con dicho dueño, éste sería responsable de cualquier accidente que pudiera ocurrir como resultado de la negligencia de su chauffeur. Si ocurriera un accidente similar mientras el chauffeur del mismo carro se dirigiera a un teatro con el fin de poner el vehículo a disposición del dueño y su familia después de la función de acuerdo con instrucciones recibidas del dueño, éste no sería responsable.'

"Por todo lo anteriormente expuesto y vistos, además, el artículo 1804 del Código Civil y los casos Vélez vs. Llavina, 18 D.P.R. 657, Truyol vs. West India Oil Company, 26 D.P.R. 361, y Alicea vs. Aboy, 23 D.P.R. 108, la Corte es de opinión que debe dictarse una sentencia declarando que la ley y los hechos están en contra del demandante y a favor de los demandados, y consecuentemente, declarar sin lugar, en todas sus partes, la demanda; todo ello sin especial condenación de costas."

En su alegato la parte apelante admite que si su reclamación se basara en los artículos 1803 y 1804 del Código Civil, dada la interpretación de esta corte de la doctrina de *respondeat superior* que surge del último de ellos, tendría razón la Corte de Distrito. Pero insiste fuertemente en la cuestión que planteara en su moción de reconsideración, a saber: que su acción no se basa en los artículos 1803 y 1804 del Código Civil, sino en el artículo 60 del Código de Enjuiciamiento Civil y que siendo ello así carece de importancia el hecho de si el automóvil se usó o no en beneficio de la empresa del demandado.

El artículo 60 invocado dice:

"Artículo 60. Un padre, o si éste hubiese muerto o abandonado a su familia, la madre, puede entablar demanda por daño causado a un hijo menor de edad, o por la muerte de éste, y un tutor por daño a un menor o pupilo, o muerte de éste, cuando dicho daño o muerte se deba al acto ilegal o negligencia de otro. Dicha demanda podrá entablarse contra la persona causante del daño o muerte, y si dicha persona estuviese empleada por otra persona responsable de su conducta, también contra ésta."

Es substancialmente igual al artículo 376 del Código de Enjuiciamiento Civil de California, que ha sido interpretado por la Corte Suprema de dicho estado, como sigue:

"Estatutos como este artículo crean un derecho enteramente distinto al investido en la persona lesionada antes de su muerte." 172 Cal. 407.

"El artículo crea un derecho enteramente distinto de aquél investido en la persona lesionada antes de su muerte." 39 Cal. App. 377.

"El artículo 376 según fué enmendado, otorga una causa de acción por un acto negligente que produzca la muerte de un menor, mas no en todos los casos. Si el menor no tiene padre vivo, o tutor, ninguno de los dos artículos concede causa de acción por su muerte, aunque dicho menor sea sobrevivido por una esposa, esposo, hijos o hermanos o hermanas." 159 Cal. 276.

"Se da una acción enteramente nueva contra la persona que hubiera sido responsable al interfecto si éste hubiera vivido—una acción que . . . es nueva en su clase, nueva en su calidad, nueva en sus

principios, nueva en todo sentido, y que sólo puede ser instada si hay alguna persona que responda a la descripción de la viuda, padre o hijo que bajo tales circunstancias sufra pérdida pecuniaria." 35 Cal. App. 51–52–53.

En el caso de *Díaz* v. *P. R. Ry. Lt. & P. Co.*, 21 D.P.R. 78 en el que se trataba de una acción de daños y perjuicios iniciada por una madre natural por la muerte de su hijo, esta Corte se expresó así:

"No hay duda alguna con respecto a cuál es la ley aplicable en este caso. Si algún derecho tiene la parte demandante, tal derecho surge del artículo 60 del Código de Enjuiciamiento Civil, vigente en Puerto Rico desde 1904, que copiado a la letra, dice así:

" *      *      *      *      *      *      *

"Dicho artículo es similar a la sección 3163 de las leyes de Idaho, 3 Idaho Codes Annotated, 55; a la 578 del Código de Enjuiciamiento Civil de Montana, 3 Montana Codes Annotated, 96 y a la 267 de los Estatutos Revisados, 1894, de Indiana, y se diferencia únicamente de la sección 376 del Código de Enjuiciamiento Civil de California, Codes of California Annotated, Civil Procedure, p. 122, en que en la de California no aparecen las palabras: *"and a guardian for the injury or death of his ward"* que figuran en los Códigos de Idaho, Montana, Indiana y Puerto Rico.

"Siendo, pues, la procedencia de la ley aplicable a este caso genuinamente americana, debemos acudir para interpretarla a la jurisprudencia de los Estados Unidos."

Sin embargo, tres años antes, en el caso de *González* v. *San Juan Light & T. Co.*, 17 D.P.R. 124, había resuelto:

"La acción establecida en el caso de autos, y que tiene por objeto reclamar una indemnización por los daños y perjuicios que sufriera la demandante por la muerte de un hijo suyo, ocasionado por la culpa o negligencia de la compañía demandada, está autorizada por las disposiciones del artículo 1803 del Código Civil, que constituyen nuestro derecho substantivo en esta materia."

En el caso de *Arreche et al.* v. *P. R. Ry. Lt. & P. Co.*, 31 D.P.R. 445, volvió a considerarse la cuestión y entrelazando los preceptos del Código Civil con los del Código de Enjuiciamiento Civil, se expresó así:

"La regla general contenida en el artículo 1803 se concretó, en

cuanto a los casos fijados en los mismos, en los artículos 60 y 61, y son éstos, como última expresión y como disposición específica del pensamiento legislativo, los que deben aplicarse."

Más tarde, en el caso de *Orta* v. *P. R. Ry. Lt. & P. Co.,* 36 D.P.R. 743, al confrontarse en una reclamación de un padre por la muerte de un hijo menor de edad, con el problema de la medida de los daños, volvió a revisar el asunto, expresándose como sigue:

"La demandada sostiene que en este caso solamente hubo prueba de que el muchacho estaba ganando algún dinero, y que, por tanto, la concesión de $3,000 era enteramente excesiva. La Corte de Distrito de San Juan en su opinión no trató de expresar las razones que tuvo para conceder la suma de $3,000, a no ser manifestando que dicha suma de $3,000 era una indemnización suficiente.

"En el caso de González v. San Juan Light & Transit Co., supra, se fijó el artículo 1803 del Código Civil como la fuente primordial de una acción de daños y perjuicios, como sigue:

" 'El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.'

"Y entonces la corte continuó expresándose así:

" 'De modo que la reclamación de la demandante en el presente caso, se halla al amparo de este precepto legal que le reconoce el derecho de que se le repare por la demandada el daño causado a ella, por la muerte de su hijo, si dicha muerte fué causada por algún acto u omisión de dicha compañía en que intervino culpa o negligencia.

" 'Este es nuestro derecho substantivo en materia de indemnización de daños y perjuicios, y de acuerdo con sus disposiciones, según se interpretan por la jurisprudencia vigente, es que deben los tribunales resolver las cuestiones que se les sometan para su resolución; y por tanto, la demandante tiene derecho, en casos en que intervenga culpa o negligencia por parte de la compañía demandada, a recobrar de ésta, los daños y perjuicios que realmente le hayan sido causados, cualesquiera que fueren.'

"En el caso de Arreche et al. v. Porto Rico Railway, Light & Power Co., 31 D.P.R. 445, también resolvimos que el artículo 1803 del Código Civil es la fuente primordial por la cual un demandante puede hacer a un demandado responsable de la muerte de otra persona. Entonces citamos los artículos 60 y 61 del Cógido de Enjuiciamiento Civil como que eran la última expresión de la Legislatura

con respecto a acciones por la muerte de una persona; sin embargo, en el caso de Arreche considerábamos específicamente quién tenía derecho a entablar la demanda. Citamos el tomo 17 de C. J., 1262, al efecto de que los artículos 60 y 61 eran la última expresión respecto a las personas que tenían derecho a entablar una acción por la muerte de otra.

"En el caso de Maldonado v. Porto Rico Drug Co., 31 D.P.R. 747, concedimos indemnización por daños y perjuicios, incluyendo el sufrimiento mental causado al padre del niño muerto. Algunas dudas han surgido sobre nuestra decisión en este caso con motivo de las varias decisiones de la Corte Suprema de los Estados Unidos y de la decisión de la Corte de Circuito de Apelaciones para el Primer Circuito en el caso de American Railroad Co. of P. R. v. Santiago, 9 F. (2d) 753.

       \*      \*      \*      \*      \*      \*      \*

"En dos casos de la Corte de Distrito de los Estados Unidos para Puerto Rico, o sea, en los casos de Torres v. Ponce Railway, etc., Co., 1 P. R. Fed. 476, y Borrero v. Compañía, etc., 1 Fed. 144, se resolvió que una acción fundada en la muerte ilegal de una persona existía sin que hubiera estatuto alguno al efecto de acuerdo con las leyes de España. En el tomo 17 de Corpus Juris, pág. 1184, nota No. 20, se hace referencia a estos casos.

"Entonces, es evidente que en Puerto Rico la causa de acción no dependía ni depende exclusivamente de los artículos 60 y 61 del Código de Enjuiciamiento Civil. La causa de acción no fué creada por primera vez por estos artículos. Dado el estado anterior de la ley en Puerto Rico, examinemos estos artículos para ver el efecto que en realidad han tenido. Se nota inmediatamente que estos dos artículos se colocan bajo el capítulo del Código de Enjuiciamiento Civil que trata de las partes en las acciones civiles. Determinan las personas que pueden entablar una acción por muerte ilegal. Tal vez concedan el derecho a entablar una causa de acción a personas que anteriormente no lo tenían e impidan que otras personas ejerzan derechos similares. No hallamos nada en estos artículos que demuestre que la Legislatura pensara que estaba creando una causa de acción por primera vez. Por el contrario, la legislatura tiene que haber sabido que existía el artículo 1803 del Código Civil y no trató de derogarlo o de restringirlo."

La jurisprudencia de Orta, supra, fué seguida en el caso

de *Carbou Rodríguez* v. *Mir*, resuelto poco después, 36 D.P.R. 809, 814, en que se dijo:

"Esto no obstante, estimándose que la situación jurídica en Puerto Rico era distinta, que los artículos 60 y 61 del Código de Enjuiciamiento Civil no eran la fuente original de la concesión de daños, sino los artículos 1803 y 1804 del Código Civil y que las Cortes Suprema y de Circuito no habían tenido aún la oportunidad de resolver el problema a la luz de todas esas consideraciones, se sostuvo la jurisprudencia establecida en el caso de Maldonado, supra."

Y así quedaron armonizados los indicados preceptos dando a los del Código Civil el carácter de ley substantiva y de adjetiva a los del Código de Enjuiciamiento.

Se sostiene ahora que el tribunal debe ir más lejos en cuanto al alcance que ha reconocido a los del último código, y, después de un detenido estudio, creemos que tiene razón el apelante. Seguiremos sosteniendo que la fuente primordial en Puerto Rico para la reclamación de daños causados por acción u omisión por una persona o por otra de quien deba responderse, está en los artículos 1803 y 1804 del Código Civil, pero sostenemos también que los artículos 60 y 61 del Código de Enjuiciamiento Civil constituyen la ley sustantiva para aquellos casos no comprendidos en los artículos 1803 y 1804 del Código Civil y a que se refieren de acuerdo con sus términos y con la jurisprudencia interpretativa de los mismos.

En el caso de Orta no obstante tratarse de una reclamación de un padre por la muerte de un hijo, la reclamación estaba claramente sostenida por los artículos 1803 y 1804 porque la parte demandada era una empresa. Aquí no. Aquí la acción, de existir, estaría basada únicamente en el artículo 60 del Código de Enjuiciamiento Civil. Dichos preceptos no están en conflicto. Se complementan. En el propio caso de Orta, supra, se dijo con referencia a los del Código de Enjuiciamiento Civil: "Tal vez concedan el derecho a entablar una causa de acción a personas que anteriormente no lo tenían."

La Corte de Circuito de Apelaciones del Primer Circuito ha dado por sentado que una acción emana del artículo 60 del Código de Enjuiciamiento Civil. En el caso de *American R. Co. of Porto Rico* v. *Santiago*, 9 F. (2d) 753, resolvió:

"En una acción en que el padre tiene derecho a demandar por la muerte de un hijo menor de edad, de conformidad con el artículo 60 del Código de Enjuiciamiento Civil de Puerto Rico, la moción de la parte demandada para que se desestime la demanda al terminarse de presentar toda la prueba, fué debidamente declarada sin lugar, a pesar de que el padre dejó de probar daños substanciales, ya que éste de todos modos tenía derecho a recobrar por lo menos daños nominales."

"En una acción por la muerte de un hijo menor de edad incoada de acuerdo con el artículo 60 del Código de Enjuiciamiento Civil de Puerto Rico, la corte debe instruir al jurado, al determinar la pérdida pecuniaria sufrida por el padre, que puede considerar la duración probable de la vida del padre y los beneficios pecuniarios que razonablemente pudo esperar recibir del hijo durante el período ordinario de vida que se esperaba éste tuviera, así como el dinero, la atención personal, el cuidado, la protección y asistencia recibidos del hijo, mas no los dolores y sufrimientos de este último o la pena del padre, y que nada debe concederse por concepto de daños **vindicatorios** (vindictive damages)."

Ahora bien, al aplicar la regla de *respondeat superior* en el caso del artículo 60 cuando se trata de automóviles, ¿debe hacerse siguiendo la jurisprudencia general del continente o la especial de Puerto Rico sobre la materia?

La parte apelada en un alegato que presentó cuando se señaló la nueva vista del recurso para ante el tribunal en pleno, entre otras cuestiones levanta la de que aunque sea el artículo 60 del Código de Enjuiciamiento Civil el que rija el caso, la sentencia de la corte de distrito debe confirmarse. Se basa para sostenerlo en el artículo 17 de la Ley de Automóviles y en el caso de *Candal* v. *Sociedad Auxilio Mutuo*, 37 D.P.R. 874, 885.

En el caso de Candal, supra, esta corte se expresó en efecto así:

"Es cierto, según se indicó en el caso de Morales v. Caraballo,

27 D.P.R. 591, que el artículo 17 de la ley para reglamentar el uso de vehículos de motor, aprobada poco después de la decisión de este tribunal en el caso de Alicea v. Aboy, supra, hace responsable al dueño de cualquier vehículo de motor por los daños causados debido a la negligecia del conductor o chauffeur mientras tal dueño se encuentra en el vehículo. Pero esa disposición es en efecto una enmienda del artículo 1804 del Código Civil tal como fué interpretado por esta corte, y no altera o modifica en forma alguna la interpretación dada al artículo últimamente mencionado en lo referente a la responsabilidad del dueño de un automóvil privado, cuando dicho dueño no se halla en el vehículo en el momento en que ocurre el accidente. No solamente por el contexto del artículo 1804 según ha sido interpretado por este tribunal, si que también por una ratificación legislativa tácita y por la aprobación de tal interpretación judicial, el dueño de un automóvil que no es usado como parte de una 'empresa,' o en relación con la misma, está exento de toda responsabilidad civil por la 'culpa' o negligencia de su chauffeur, a menos que tal dueño esté dentro del carro en el momento en que ocurra el accidente. Si no fuera por la reciente limitación legislativa sobre tal exención, el dueño de un automóvil privado que no es usado en relación con una 'empresa' todavía estaría exento de toda responsabilidad legal, aun cuando estuviera sentado al lado de su chauffeur al tiempo de ocurrir un accidente debido a la culpa o negligencia de ese empleado, mientras éste actúe dentro de las atribuciones de su empleo.''

La Ley de Automóviles contiene la última expresión de la voluntad de la Asamblea Legislativa de Puerto Rico. Se aprobó mucho después del Código Civil y del Código de Enjuiciamiento Civil y si se estimó que modificaba en sentido liberal el artículo 1804 del Código Civil, no hay motivo justificado para sostener que no se aplique para modificar en sentido restrictivo el artículo 60 del Código de Enjuiciamiento Civil. Y siendo ello así no puede prosperar la acción del demandante, porque Celestino Andrade, el demandado, no viajaba en el automóvil cuando ocurrió el accidente.

Hay otra cuestión suscitada por la parte apelada en su indicado alegato que aunque no llegáramos a la anterior conclusión nos llevaría quizá también a la confirmación de la sentencia al vernos obligados a desestimar el recurso, y es

la de que la transcripción no contiene la de la evidencia que sirvió de fundamento a la corte de distrito para dictar su sentencia. El recurso se ha argumentado a base de la apreciación de la evidencia que contiene la relación del caso y opinión en que se funda la sentencia y la parte apelada sostiene que ella presentó evidencia sobre ciertos particulares tales como que Celestino Andrade no tomó en comodato el automóvil sino en arrendamiento y que el *chauffeur* Reyes Ríos que lo guiaba cuando ocurrió el accidente era el *chauffeur* del dueño del carro, evidencia que no fué creída por la corte de distrito pero que tendría que ser revisada por la Corte Suprema antes de proceder a revocar la sentencia recurrida. En una palabra, el apelado sostiene que aquí están envueltas no sólo cuestiones de derecho si que también de hecho y que la apelante no ha colocado a la corte de apelación en las mismas condiciones en que se encontraba la de primera instancia al resolver el litigio.

*A virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Aldrey está conforme con el resultado.