## NICOLÁS ORTA, demandante y apelado, v. THE PORTO RICO RAILWAY LIGHT & POWER Co., demandada y apelante.

No. 3640.—*Visto:* Marzo 9, 1926. *Resuelto:* Mayo 16, 1927.

1. MUERTE—ACCIÓN POR MUERTE CAUSADA—ALEGACIONES Y PRUEBA—INCONGRUENCIAS ENTRE LAS ALEGACIONES Y LAS PRUEBAS—INCONGRUENCIA INMATERIAL.—Cuando se alega que al caer un alambre eléctrico y chocar con un niño causóle intensa conmoción y lo lanzó contra una pared fracturándole el cráneo y causándole así la muerte, y la prueba demuestra que la causa eficiente y próxima del daño fué la caída del alambre, el hecho de que no se probara que el niño se cayó contra la pared se resolvió era una incongruencia inmaterial.

2. ELECTRICIDAD—DAÑOS CAUSADOS—ACCIONES— PRESUNCIONES — NEGLIGENCIA.—DOCTRINA DE RES IPSA LOQUITUR.—Una corporación de servicio público que usa alambres eléctricos de alta tensión sobre las calles de una ciudad está en el deber de proteger al público; y si un alambre así cargado cae en una de dichas calles causando la muerte de alguien la doctrina de *res ipsa loquitur* es aplicable.

3. MUERTE—ACCIÓN POR MUERTE CAUSADA—DERECHO DE ACCIÓN Y DEFENSAS—LEY QUE REGULA.—Los artículos 60 y 61 del Código de Enjuiciamiento Civil no son la fuente original de la concesión de daños por muerte causada por un acto ilegal sino los artículos 1803 y 1804 del Código Civil.

4. MUERTE—ACCIÓN POR MUERTE CAUSADA—DAÑOS, CONFISCACIONES *(Forfeitures)* o MULTAS *(Fines)*—ELEMENTOS DE DAÑOS—SUFRIMIENTO MENTAL O MORAL—MUERTE ILEGAL DE UN HIJO MENOR.—El sufrimiento moral causado a los padres de un niño muerto a causa de un acto ilícito, puede considerarse como un elemento de indemnización por daños.

5. MUERTE—ACCIÓN POR MUERTE CAUSADA—ALEGACIONES Y PRUEBAS—PRESUNCIONES—PRUEBA DE LOS DAÑOS Y PERJUICIOS SUFRIDOS POR LA MUERTE.—En acción por daños por la muerte ilegal de un hijo, el padre o la madre no necesitan demostrar minuciosamente los daños y perjuicios sufridos con la muerte; del hecho mismo de la muerte la ley presume una pérdida pecuniaria que, si bien no puede medirse exactamente, es suficiente para sostener una indemnización que no exceda de una suma razonable.

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito), declarando con lugar demanda de daños y perjuicios, con costas. *Confirmada.*

*J. H. Brown, y Clemente Ruiz Nazario,* abogados del apelante; *Rafael Arce Rollet y Manuel Tous Soto,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este es un caso de daños y perjuicios. A la apelante, The Porto Rico Railway, Light & Power Company, se le imputó negligencia que ocasionó la muerte de Fernando Orta Jurado, hijo del demandante. La causa principal de la imputación de negligencia fué que dicha compañía tenía

un servicio público de alambres eléctricos en Caguas, que conducían una corriente de alta tensión, a saber, unos 4,400 voltios; que estos alambres no estaban debidamente aislados o de alguna otra manera protegidos para evitar que se cayeran; que mientras dicho niño, que tenía unos 13 años de edad, iba por las calles de Caguas, uno de los alambres se rompió, cayó a la calle y envolvió a dicho niño, causándole una intensa conmoción en su cuerpo y lanzándolo finalmente contra la pared de una casa, fracturándole su cráneo y causándole en esta forma una muerte inmediata.

La Corte de Distrito de San Juan llegó a la conclusión de que no hubo prueba de que el niño se hubiera caído de un tejado, como se alegaba en la contestación de la demandada; que la muerte de Fernando Orta no podía explicarse en otra forma sino como el resultado de la conmoción eléctrica recibida por su cuerpo debido a la corriente eléctrica que conducían los alambres que cayeron a la calle en el momento en que él pasaba, los cuales alambres al mismo tiempo lo derribaron o lo hicieron caer al suelo, causándole la fractura de la base del cráneo, la cual también pudo haber sido la causa de su muerte.

[1] La apelante trata de demostrar que hubo una incongruencia entre la demanda y la prueba y que la sentencia no se ajustaba ni a una ni a otra. La apelante descansa en la bien establecida teoría de que si un demandante alega un fundamento de negligencia está obligado por esa alegación y no puede obtener sentencia por otro fundamento o por algún fundamento general de negligencia cuando su demanda demuestra que descansa en un fundamento específico. La apelante hace grandes esfuerzos para indicarnos que algunos de los testigos que declararon como peritos aventuraron la teoría de que los alambres eléctricos habían levantado el cuerpo del niño a unos 30 ó 40 pies de altura, y que, por consiguiente, cayó y se fracturó el cráneo.

Puede admitirse que la autopsia, tomada en relación con las declaraciones de algunos de los peritos, en verdad ten-

dió a demostrar que la muerte de este niño no fué causada instantáneamente por la conmoción sino que lo fué al chocar su cabeza contra algún objeto muy duro, cualquiera que fuera.   Hubo prueba de que la corriente de 4,400 voltios de haber tocado directamente el cuerpo del niño, le hubiera producido la muerte instantánea.   Sin embargo, la prueba tendió a demostrar que él vivió y respiró por unos minutos después del accidente, y esa misma prueba tendió a demostrar que aún una corriente de alta tensión no siempre produce la muerte instantánea.   No creemos que la posibilidad de que la muerte de este niño ocurriera como resultado de la corriente eléctrica en sí misma quedara enteramente excluída.   No es necesario que invirtamos una gran cantidad de tiempo en determinar si la muerte fué o no directamente causada por la electricidad, pues creemos que la manera exacta en que la muerte fué causada no es de alta importancia en este caso.

La apelante insiste en que no hubo prueba en apoyo de la conclusión de que el niño cayó contra la pared lateral de una casa, según se alega en la demanda, o que su cabeza dió contra el suelo, y que tampoco hubo otra prueba determinada para demostrar la forma en que la muerte del niño fué causada.   Este no es un caso en que el demandante alega una serie de hechos esenciales en su demanda y luego en el juicio descansa en otros distintos.   El hecho fué, según quedó establecido por toda la prueba del caso, tanto directa como circunstancial, que la muerte del niño fué causada por la caída del alambre eléctrico.   Era relativamente de poca importancia, por lo tanto, si su muerte fué causada por la electricidad directamente, o si por alguna otra causa que no se explica claramente fué lanzado contra algún objeto duro.   La causa eficiente y próxima de este accidente fué la caída del alambre eléctrico que chocó con el niño.   Lo que sucediera después de la caída de los alambres puede dejarse enteramente a suposiciones sin destruir el hecho esencial a que nos hemos referido.   No im-

porta que en la demanda se alegara que el niño cayó contra la pared y que esto no se probara. Sostenemos que ello era una incongruencia inmaterial. Es de notarse que la corte no basó su conclusión en el hecho de que el niño cayera contra la pared, sino que expresó en términos generales todo lo que era necesario decir, o sea, que la muerte pudo haber sido producida al chocar la cabeza del niño contra un objeto duro como resultado de la caída del alambre eléctrico.

[2] La corte también sostuvo que constituía negligencia por parte de la compañía el tener alambres de alta tensión en sitios muy poblados sin la debida protección y vigilancia, y que esta omisión fué la causa próxima de los daños sufridos por el hijo del demandante. La apelante sostiene que no se demostró la verdadera negligencia de la compañía demandada y que la corte al parecer estaba implícitamente aplicando la doctrina de *res ipsa loquitur*. Sin embargo, con excepción de los casos de Pennsylvania que cita la apelante, la regla prevaleciente en los Estados Unidos es que cuando un alambre de alta tensión cae en una calle pública, causando daño, la doctrina de *res ipsa loquitur* es aplicable.

Bajo el título Electricidad, en 20 C. J. página 380, pár. 63, encontramos lo siguiente:

"(2) *Res Ipsa Loquitur.* La doctrina de *res ipsa loquitur* encuentra aplicación frecuente en los casos sobre electricidad cuando las circunstancias del accidente son tales que crean una presunción o inferencia de negligencia suficiente para destruir el peso que descansa originalmente en el demandante y a menudo para hacer recaer en el demandado el peso de controvertir tal presunción mediante prueba, pero hablando en términos precisos no tiene el efecto de cambiar el peso de la prueba. El hecho de que el demandado conduzca electricidad a determinado sitio; que la electricidad así empleada pueda escaparse en tal forma que produzca daño; y que un daño debido a la electricidad, de hecho ocurra en un sitio donde la parte que lo sufre tiene derecho a estar, se ha resuelto generalmente que constituye un caso *prima facie* de negligencia. El hecho

de que alambres que conduzcan una corriente eléctrica peligrosa se hayan roto o separado de sus postes en la calle o camino y causado daño, se ha resuelto generalmente que crea una presunción de negligencia, aunque hay autoridades que sostienen que la doctrina no es aplicable a tales casos.''

El texto anterior está sostenido por los casos de *Rosado* v. *Ponce Railway Light & Power Co.,* 18 D.P.R. 632; *Edmanson* v. *Wilmington & Philadelphia Traction Co.,* 120 Atl. 923; *Appalachian Power Co.* v. *Hale,* 113 S. E. 711; *Colusa Parrot Mining & Smelting Co.* v. *Monahan,* 162 Fed. 276; *Neary* v. *Georgia Service Co.,* 27 Ga. App. 238, 107 S. E. 893; *Von Treba* v. *Laclede Gas Light Co.,* 209 Mo. 648, 108 S. W. 559; *O'Leary* v. *Glens Falls Gas & Electric Light Co.,* 107 App. Div. 505; *Wolpers* v. *New York & Queens Electric Light & Power Co.,* 91 App. Div. 424; *Smith* v. *Brooklyn Heights Railroad Co.,* 82 App. Div. 531; *Diller* v. *Northern California Power Co.,* 162 Cal. 531; *Herbert* v. *Lake Charles Ice & Water Works Co.,* 111 La. 522; *San Juan Light & Transit Co.* v. *Requena,* 224 U. S. 89.

Aunque en el caso de *Rosado* v. *Ponce Railway Light & Power Co., supra,* no discutimos la jurisprudencia ampliamente, el mismo es una autoridad en Puerto Rico para la aplicación de la doctrina. Los hechos de aquel caso eran enteramente similares a los del presente caso. La apelante también sostiene que la compañía demandada hizo todo lo necesario para proteger al público de la caída de alambres peligrosos. La prueba, como hemos indicado, demuestra que estos alambres no estaban debidamente aislados. La apelante aparentemente descansa en algunas de las manifestaciones de los peritos al efecto de que estos alambres generalmente no están protegidos en forma distinta a la en que la apelante en este caso trató de proteger al público o de aislar sus alambres. La tendencia de todas las autoridades es en sentido contrario.

*Herbert* v. *Lake Charles Ice & Water Works Co., supra; Colusa Parrot Mining & Smelting Co.* v. *Monahan, supra;*

9 Ruling Case Law 1210, 1211, en donde se dice: "Debido a la naturaleza misma de este negocio una compañía eléctrica que emplea alambres de alta tensión, tiene, independientemente de cualquier relación contractual, el deber legal hacia toda persona que en el ejercicio de una ocupación legítima, y estando en un lugar donde tiene el derecho legal de encontrarse, se halle expuesta a venir en contacto con dichos alambres, de ver que dichos alambres estén debidamente colocados con respecto a la seguridad de tales personas y que estén debidamente aislados"; *Lewis's Executors, appellants,* v. *Bowling Green Gas Light Co.,* 22 L. R. A. (N. S.) 1169 y la nota detallada; *Braun* v. *Buffalo General Electric Co.,* 200 N. Y. 484, 94 N. E. 206, 34 L. R. A. (N. S.) 1089 y nota, así como algunos de los otros casos citados previamente en esta opinión.

No encontramos que la apelante cumpliera suficientemente con el deber de explicar cómo cayeron estos alambres, o de relevarse a sí misma de la presunción legal establecida por la doctrina que hemos mencionado. La apelante también asignó como error el que la corte fijara los daños en la suma de $3,000.

[3, 4] El demandante solicitaba $10,000 por concepto de daños y perjuicios. La demandada y apelante se funda en el caso de *González* v. *San Juan Light & Transit Co.,* 17 D.P.R. 124, en el que se resolvió que "Solamente los daños que real y verdaderamente se hubieren causado, pueden ser indemnizados en estos casos, y por consiguiente, a fin de que la corte pueda determinar los daños sufridos por el demandante es necesario que se demuestre su verdadera existencia y se prueben los hechos que hayan de servir de base para fijar la cuantía de la indemnización."

La demandada sostiene que en este caso solamente hubo prueba de que el muchacho estaba ganando algún dinero, y que, por tanto, la concesión de $3,000 era enteramente excesiva. La Corte de Distrito de San Juan en su opinión no trató de expresar las razones que tuvo para conceder

la suma de $3,000, a no ser manifestando que dicha suma de $3,000 era una indemnización suficiente.

En el caso de *González* v. *San Juan Light & Transit Co., supra,* se fijó el artículo 1803 del Código Civil como la fuente primordial de una acción de daños y perjuicios, como sigue:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Y entonces la corte continúo expresándose así:

"De modo que la reclamación de la demandante en el presente caso, se halla al amparo de este precepto legal que le reconoce el derecho de que se le repare por la demandada el daño causado a ella, por la muerte de su hijo, si dicha muerte fué causada por algún acto u omisión de dicha compañía en que intervino culpa o negligencia.

"Este es nuestro derecho substantivo en materia de indemnización de daños y perjuicios, y de acuerdo con sus disposiciones, según se interpretan por la jurisprudencia vigente, es que deben los tribunales resolver las cuestiones que se les sometan para su resolución; y por tanto, la demandante tiene derecho, en casos en que intervenga culpa o negligencia por parte de la compañía demandada, a recobrar de ésta, los daños y perjuicios que realmente le hayan sido causados, cualesquiera que fueren."

En el caso de *Arreche et al.* v. *Porto Rico Railway, Light & Power Co.,* 31 D.P.R. 445, también resolvimos que el artículo 1803 del Código Civil es la fuente primordial por la cual un demandante puede hacer a un demandado responsable de la muerte de otra persona. Entonces citamos los artículos 60 y 61 del Código de Enjuiciamiento Civil [1]

---

[1] Se insertan los artículos 60 y 61 del Código de Enjuiciamiento Civil:

Artículo 60. Un padre o si éste hubiese muerto o abandonado a su familia, la madre, puede entablar demanda por daño causado a un hijo menor de edad, o por la muerte de éste, y un tutor por daño a un menor o pupilo, o muerte de éste, cuando dicho daño o muerte se deba al acto ilegal o negligencia de otro. Dicha demanda podrá entablarse contra la persona causante del daño o muerte, y si dicha persona estuviese empleada por otra persona responsable de su conducta, también contra ésta.

Artículo 61. Cuando la muerte de una persona mayor de edad fuere causada por el acto ilegal o negligencia de otra, sus herederos o representantes personales podrán entablar demanda por daños y perjuicios contra la persona causante de la muerte; y si dicha persona estuviere empleada por otra, responsable de su conducta, podrán también entablarla contra ésta. En toda demanda con arreglo a este artículo y al precedente, se regulará el importe de los daños y perjuicios que fueren justos vistas todas las circunstancias del caso.

como que eran la última expresión de la Legislatura con respecto a acciones por la muerte de una persona; sin embargo, en el caso de *Arreche* considerábamos específicamente quién tenía derecho a entablar la demanda. Citamos el tomo 17 de C. J., 1262, al efecto de que los artículos 60 y 61 eran la última expresión respecto a las personas que tenían derecho a entablar una acción por la muerte de otra.

En el caso de *Maldonado* v. *Porto Rico Drug Co.*, 31 D. P.R. 747, concedimos indemnización por daños y perjuicios, incluyendo el sufrimiento mental causado al padre del niño muerto. Algunas dudas han surgido sobre nuestra decisión en este caso con motivo de las varias decisiones de la Corte Suprema de los Estados Unidos y de la decisión de la Corte de Circuito de Apelaciones para el Primer Circuito en el caso de *American Railroad Co. of P. R.* v. *Santiago*, 9 Fed. (2nd) 753.

Hace muchos años que Lord Mansfield dijo que cuando las decisiones de las cortes ponían en duda la interpretación de los estatutos, se hacía bien en examinar de nuevo los mismos, lo que estamos tratando de hacer ahora. Las decisiones de la Corte Suprema de los Estados Unidos a que hemos hecho referencia son principalmente una interpretación de la Ley Federal sobre Responsabilidades de Patronos. Esta en sus términos esenciales se supone que sigue la famosa Ley de Lord Campbell. La necesidad de esta ley surgió del hecho de que de acuerdo con el derecho común de Inglaterra no podía obtenerse indemnización por daños y perjuicios por la muerte de una persona. Todas las cortes de los Estados Unidos, con muy pocas excepciones, resolvieron que los nuevos estatutos eran la única fuente de la ley y que tan sólo podían considerarse éstos para determinarse las causas de acción o la indemnización a que se tenía derecho por los daños causados por la muerte ilegal de una persona. Sin embargo, en Puerto Rico la causa de acción no tiene su origen en los artículos 60 y 61 del Código de Enjuiciamiento Civil sino en el artículo 1803 del

Código Civil, que ha sido copiado del artículo 1902 del Código Civil español.

Una revisión excelente de toda esta cuestión puede hallarse en el caso de *Manzanares* v. *Moreta,* 38 Jurisprudencia Filipina 874. El sumario demuestra que la corte se fundó en el artículo 1902 del Código Civil (equivalente al 1803 de nuestro código) para fijar la indemnización por los daños sufridos por una madre con la pérdida de un hijo, quien había sido privada de su ayuda y asistencia, a las cuales era de presumirse que ella tenía derecho durante su senectud si dicho hijo hubiese vivido hasta ser un hombre. La opinión es bastante corta y no analiza las autoridades pero el juez Sr. Malcolm, con quien estuvo conforme el juez Fisher, creyó prudente extender, en una opinión concurrente, el razonamiento. Incidentalmente mostró que no había habido prueba especial de la cuantía de los daños sufridos. Entonces continuó diciendo que de acuerdo con la ley común no había derecho a indemnización por la muerte de una persona y que por la ley civil existente en España, Francia, Puerto Rico y Louisiana, el verdadero principio era algo obscuro. El creyó que el Estado de Louisiana originalmente era contrario a que se concediera indemnización no habiendo ley al efecto, pero hallamos posteriormente, probablemente debido a una reforma de la ley, por lo menos una decisión de dicho Estado que parece demostrar lo contrario, o sea, el caso de *Bourg* v. *Brownell-Drews Lumber Co.,* 120 La. 1010. La corte se fundó en el artículo 2315 del Código Civil, que equivale al artículo 1803 de nuestro Código.

El juez Sr. Malcolm demostró que la regla era distinta en España y Francia y citó autoridades al efecto de que había derecho a indemnización por los daños causados por la muerte de una persona. Se citaron autoridades antiguas como *Grocio, Puffendorf* y *Domat.* Se mencionó especialmente a Grocio para demostrar que había derecho a indemnización por los daños causados con motivo de la

muerte de una persona y que dichos daños incluían la esperanza que uno podía tener a que el interfecto le mantuviera.

En la página 882 el juez Sr. Malcolm dijo:

"Tanto porque la ley aplicable en Filipinas es de origen civil, como porque la dura doctrina del derecho consuetudinario sobre la materia, no nos obliga; tanto porque es un principio más justo y equitativo como porque la razón y la justicia natural son los consejeros más elocuentes, declaramos que en esta jurisdicción es sostenible la acción por daños y perjuicios en el caso de que una persona haya encontrado la muerte a causa de un acto ilícito. Puede admitirse, dado que no se ha opuesto reparo alguno, que el derecho primario de acción radica en los padres."

Es evidente que en las Filipinas no hay disposiciones de ley similares a los artículos 60 y 61 de nuestro Código de Enjuiciamiento Civil.

El Juez Malcolm dijo que las personas que desearen recobrar indemnización por daños sufridos, ordinariamente deberían establecer sus pérdidas pecuniarias mediante prueba satisfactoria, pero que en ciertos casos la ley presumía la pérdida debido a la imposibilidad de la prueba exacta y la forma de computar la cantidad de la pérdida sufrida. En otras palabras, que la pérdida podía ser probada, bien mediante prueba o por presunción; y que, por ejemplo, cuando existía la relación de marido y mujer o padre e hijo, siempre que se demostrara que el hijo era menor de edad, la ley presumía una pérdida pecuniaria al superviviente, del hecho de la muerte, y que no era necesario someter prueba de tal pérdida, y el juez citó casos de los Estados de Illinois, Pennsylvania, Washington y Carolina del Sur, así como el caso de *Díaz v. San Juan Light & Transit Co.*, 17 D.P.R. 69. Este último caso, transcribiéndose el razonamiento del Juez del Toro, se citó para demostrar que no era necesario que el demandante probara la pérdida sufrida en pesos y centavos, sino que era suficiente que demostrara que había sido realmente perjudicado, etc. Se

citó también el caso de *González* v. *San Juan Light &
Transit Co., supra,* posiblemente para demostrar la apli-
cabilidad de un artículo similar al 1803, así como para de-
mostrar el estado general de la jurisprudencia.

Entonces el Juez Malcolm prácticamente termina su
opinión en la siguiente forma:

"Obligar a la demandante que pruebe exactamente los perjui-
cios que ha sufrido, sería pedir un imposible—sería, en realidad,
volver al antiguo principio de derecho consuetudinario que prohibía
cobrar daños. El concepto material y tosco que tenemos acerca de
los trabajos tales como el labrar la madera o acarrear el agua, no
sirve de norma para justipreciar su valor. Aunque se iniciara de
nuevo el asunto, a duras penas si podría la demandante presentar
pruebas mejores que las que tenemos ante Nos. Como contamos con
hechos que nos satisfacen y de los cuales podemos deducir la cuan-
tía del daño, y como la ley presume que ha habido perjuicio pecu-
niario por el hecho de la muerte, y como el Juez *a quo* ha hecho
un cálculo prudencial, debemos dar por terminada nuestra tarea
con la satisfacción de que, dentro de la provisión humana, se ha
hecho justicia en el presente caso."

En dos casos de la Corte de Distrito de los Estados
Unidos para Puerto Rico, o sea, en los casos de *Torres* v.
*Ponce Railway, etc., Co.,* 1 P. R. Fed. 476, y *Borrero* v.
*Compañía, etc.,* 1 Fed. 144, se resolvió que una acción fun-
dada en la muerte ilegal de una persona existía sin que hu-
biera estatuto alguno al efecto de acuerdo con las leyes de
España. En el tomo 17 de Corpus Juris, pág. 1184, nota
No. 20, se hace referencia a estos casos.

Entonces, es evidente que en Puerto Rico la causa de
acción no dependía ni depende exclusivamente de los artí-
culos 60 y 61 del Código de Enjuiciamiento Civil. La
causa de acción no fué creada por primera vez por estos
artículos. Dado el estado anterior de la ley en Puerto
Rico, examinemos estos artículos para ver el efecto que
en realidad han tenido. Se nota inmediatamente que es-
tos dos artículos se colocan bajo el capítulo del Código de
Enjuiciamiento Civil que trata de las partes en las accio-

nes civiles. Determinan las personas que pueden entablar una acción por muerte ilegal. Tal vez concedan el derecho a entablar una causa de acción a personas que anteriormente no lo tenían e impidan que otras personas ejerzan derechos similares. No hallamos nada en estos artículos que demuestre que la Legislatura pensara que estaba creando una causa de acción por primera vez. Por el contrario, la legislatura tiene que haber sabido que existía el artículo 1803 del Código Civil y no trató de derogarlo o de restringirlo.

Indudablemente en los Estados Unidos el origen de toda acción fundada en la muerte ilegal de una persona es la Ley de Lord Campbell, y necesariamente dicha ley recibió una interpretación definida en Inglaterra, que fué seguida en los Estados Unidos. Sin embargo, en la adopción de los artículos 60 y 61 no hallamos intención alguna por parte ·de la Legislatura de adoptar toda la interpretación que las cortes de los distintos estados de la Unión Americana han dado a dichas leyes.

Algunas de las leyes posteriores, notablemente la Ley Federal sobre Responsabilidades de Patronos, hizo que la acción se basara en la relación de dependencia, estableciendo diferencia entre parientes cercanos y lejanos. Algunos de los estatutos de los Estados Unidos usan específicamente las palabras pérdida ''pecuniaria.'' No obstante, en un número de estados, cada corte ha interpretado la ley de supervivencia (*survivorship act*) a la luz de la práctica anterior y de la jurisprudencia. Nada hay en los artículos 60 ó 61 que demuestre intención alguna de desviarse de las causas de acción existentes anteriormente, o la intención por parte de nuestra legislátura de adoptar la ley con la interpretación dádale en algún otro estado.

Bajo estas circunstancias nos sentimos en libertad de sostener la jurisprudencia ya establecida por nosotros en el caso de *Maldonado* v. *Porto Rico Drug Co., supra*. Es cierto que en dicho caso mencionamos una decisión de Cali-

fornia y dicho estado en el ínterin ha adoptado una regla distinta; no obstante, el Estado de Louisiana en numerosos casos ha concedido compensación por el sufrimiento mental como un elemento de daño y las cortes de dicho estado están dispuestas a considerar el sufrimiento mental como un daño real y pecuniario.

Entre otros: *Johnson* v. *Industrial Lumber Co.*, 131 La. 898; *Thompson* v. *New Orleans Railway & Light Co.*, 148 La. 698; *Bourg* v. *Brownell-Drews Lumber Co.*, 120 La. 110; *Fuchs* v. *Kansas City Southern Railway Co.*, 132 La. 782, 794; *Underwood* v. *Gulf Refining Co.*, 128 La. 968; *Wooten* v. *United Irr. & Rice Mill Co.*, 128 La. 1009, en que la corte dió a entender que se podía conceder indemnización por el sufrimiento mental pero que la doctrina debía ser aplicada con gran cautela.

El Juez Rodey, en el caso de *Periañes* v. *Valdés*, 4 P. R. Fed. 126, resolvió que "de acuerdo con la ley vigente en esta isla un padre tiene derecho a indemnización por la muerte de un hijo en esta forma, así como por la pérdida del sostenimiento que tiene el demandante con la muerte del hijo, y con la pérdida del cuidado que como padre sufría y su sufrimiento mental como resultado de la muerte."

Se ha llamado nuestra atención al caso de *Michigan Central R. R. Co.* v. *Vreeland*, 227 U. S. 59, que es probablemente el caso principal sobre la fijación de la indemnización que por concepto de daños debe concederse por la muerte ilegal, especialmente bajo la Ley Federal sobre las Responsabilidades de Patronos. La corte acepta y asume que la Ley Federal sobre Responsabilidades de Patronos sigue a la Ley de Lord Campbell, pero la primera en muchas cosas es más específica. El caso de *Vreeland* no puede ser examinado sin llegar a la conclusión de que la Corte Suprema de los Estados Unidos estaba tomando en consideración únicamente una causa de acción que fué creada primeramente por una ley nueva y no la situación en que una causa de acción había existido siempre por la muerte ilegal de una

persona. La corte dijo: "El fin claro del Congreso fué crear una causa de acción para ciertos parientes que dependían de un empleado y eran ilegalmente perjudicados por los daños y perjuicios pecuniarios resultantes de la muerte ilegal del mismo." Estamos muy convencidos de que si se siguiera la teoría del caso de *Vreeland*, el sufrimiento mental no podría considerarse como un elemento de indemnización por daños.

Sin embargo, aún si estuviéramos dispuestos a seguir la teoría del caso de *Vreeland* en Puerto Rico como que rige la interpretación de nuestra ley local, no obstante, en dicho caso no hallamos nada que requiera que un padre o una madre demuestren minuciosamente los daños y perjuicios sufridos con la muerte de un hijo. Nada encontramos en dicho caso que diga tal cosa. La sentencia apelada en el caso de *Vreeland* fué revocada específicamente por una instrucción que permitía que el jurado especulara respecto a la cuantía de la indemnización por algunos daños que la corte superior creyó que en ningún caso debían considerarse como daños pecuniarios.

Un número de cortes interpretando la Ley Federal sobre Responsabilidades de Patronos no ha creído que el caso de *Vreeland* fuera un obstáculo para que se concediera a los padres una indemnización razonable sin demostración fuerte en casos en que la muerte del hijo había sido ilegal.

En el caso de *Lundeen* v. *Great Northern Railway Co.,* 128 Minn. 336, 150 N. W. 1088, se resolvió que un jurado puede fundarse, para calcular la cuantía de la indemnización por daños y perjuicios que se debe conceder, en la edad del interfecto, su salud, costumbres, habilidad para ganar dinero, disposición para ayudar al beneficiario, edad y circunstancias del padre y la ayuda que en vida le prestaba el interfecto. La corte estuvo de acuerdo con la indemnización concedida en ese caso e indicó que el caso de *Michigan Central Railway Co.* v. *Vreeland* no era aplica-

ble, ya que dicho caso fué revocado debido a una instrucción sobre la cuantía de la indemnización que permitió al jurado incluir cuestiones cuyo valor pecuniario no podía fijarse, como por ejemplo, la pérdida que sufría la esposa de la compañía y consejos de su esposo. La prueba de ayuda pecuniaria a los padres, de un hijo mayor de edad, en el caso de *Lundeen* fué insignificante y, sin embargo, se sostuvo un veredicto concediendo $2,000 de indemnización. La corte examinó numerosos casos en que la prueba de ayuda a los padres o de la habilidad para ganar dinero no era mayor, o mucho mayor, que en el presente caso.

El caso de *Davis et al.* v. *Cincinnati, etc.*, 188 S. W. 1061, también siguió la doctrina del caso de *Vreeland* y resolvió que como cuestión de ley un hijo tenía derecho a esperar ayuda pecuniaria de su padre durante su minoridad. La corte excluyó tales elementos como cuidado, consejo, enseñanza y educación que un hijo puede recibir de su padre y limitó la cuantía a recobrar a la pérdida pecuniaria realmente sufrida.

El caso de *Berg* v. *Atlantic Coast Line Railway Co.*, 93 S. E. 390, citando el caso de *Vreeland* y otros de la Corte Suprema de los Estados Unidos, demostró que entre algunos parentescos, como entre padre e hijo, debía presumirse la relación de dependencia de acuerdo con la Ley Federal. Se resolvió que no era necesario alegar o probar la relación de dependencia.

El caso de *Fogarty* v. *Northern Pac. Railway Co.* (Wash.), L. R. A. 1916–C 803, indica que el caso de *Vreeland* no eliminó la responsabilidad legal como un factor. "Todo el argumento," dijo la corte, "se dirige a eliminar el derecho a indemnización por parte del cónyuge supérstite por 'la pérdida y la compañía, etc.,' ya que estas cosas no son susceptibles de ser medidas por una regla material." Demostrado el abandono en dicho caso, se tomó en consideración únicamente para mitigar la indemnización.

En el caso de *Tobin* v. *Bruce* (S. D.), 162 N. W. 933, citándose el caso de *Vreeland* y muchos otros, se indicó que la Ley Federal no exigía que se demostrara la relación de dependencia cuando los padres o los hijos pedían indemnización como tales.

Unicamente había que demostrar la relación de dependencia cuando otros parientes entablaban la acción.

[5] Además de los casos citados y los resumidos en la opinión del Juez Malcolm, las decisiones de los Estados de Oregón, Carolina del Sur, Virginia y Nevada demuestran o o parecen demostrar que en lo que a un padre o a un hijo se refiere, aunque limita la cuantía de la indemnización a recobrar a pequeñas sumas, existe la presunción del derecho a indemnización sin mucha prueba a ese efecto. En muchas cortes se deja toda la cuestión al jurado y generalmente no se altera un veredicto concediendo $2,000, $3,000 ó $4,000.

En 17 C. J. 1352 se hace un resumen del principio, como sigue: Cuando existe la relación de marido y mujer, o de padre e hijo menor de edad, la ley generalmente presume una pérdida pecuniaria para el superviviente, del hecho mismo de la muerte, de suerte que no se requiere prueba de tal extremo.

El artículo 61 termina en la siguiente forma: ''En toda demanda con arreglo a este artículo y al precedente, se regulará el importe de los daños y perjuicios que fueren justos vistas todas las circunstancias del caso.'' Leyendo este artículo, no vemos intención alguna de parte de la Legislatura de poner el límite más bajo imaginable de indemnización a un padre por la muerte de un hijo. Por el contrario, creemos que la Legislatura daba a las cortes amplia discreción. Necesariamente cuando muere un niño muy joven, los daños sufridos por el padre son principalmente cuestión de especulación. En Puerto Rico, como en algunos de los estados, un padre tiene derecho a esperar a que su hijo le mantenga, no tan sólo mientras el hijo es menor de edad, sino durante toda la vida de éste, siempre que el padre tenga necesidad de

ello.   Esta esperanza no puede medirse exactamente y debe sostenerse una indemnización que no exceda de una suma razonable por la muerte de un hijo.

El caso de *González* v. *San Juan Light & Transit Co.*, *supra,* fué necesariamente revocado por el caso de *Maldonado*.   Pero, si no lo hubiese sido, debe considerársele como revocado en tanto en cuanto es inconsistente con los principios sentados en el presente caso.

El caso de *American Railroad Co. of Porto Rico* v. *Santiago,* 9 Fed. (2nd) 753, no debe ir contra las consideraciones a que hemos llegado.   La Corte de Circuito de Apelaciones no estaba considerando todo el estado de la ley en Puerto Rico. Tenemos ideas de que hasta que las cortes superiores resuelvan lo contrario, especialmente siguiendo la doctrina del caso de *González* v. *Díaz,* 261 U. S. 102–106, que es esta Corte Suprema de Puerto Rico la que debe dar el primer paso en determinar la base para la indemnización que por concepto de daños y perjuicios se debe conceder a un padre por la muerte ilegal de un hijo.   Por supuesto, si la Corte de Circuito de Apelaciones hubiese estado considerando enteramente nuestros estatutos y nuestra jurisprudencia, la opinión de dicha corte hubiese sido en tal grado persuasiva, que probablemente la hubiéramos considerado obligatoria, aunque no tal vez técnicamente.   En otras palabras, tenemos ideas de que un caso apelado de la Corte de Distrito de los Estados Unidos para Puerto Rico sobre una cuestión que las cortes insulares no han resuelto específicamente, no puede considerarse obligatoria hasta que se demuestre que la Corte Federal de Circuito de Apelaciones ha tomado en consideración toda la cuestión.   Las cortes de los Estados Unidos continentales, incluyendo las de Circuito de Apelaciones, consideran que los artículos 60 y 61, o artículos equivalentes, establecen por primera vez una causa de acción por muerte ilegal, lo que no era cierto en España, en las Islas Filipinas o en Puerto Rico.

*La sentencia apelada debe ser confirmada.*