SUCESIÓN DE ALFREDO MATHEU, ETC., demandante y apelada, *v.* MUNICIPIO DE ARECIBO, demandado y apelante.

Núm. 7965.—*Sometido:* Febrero 9, 1940. *Resuelto:* Abril 23, 1940.

*Luis Mercader,* abogado del apelante; *Diego E. Ramos,* abogado de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este es un pleito entablado por una viuda y sus hijos en reclamación de los daños y perjuicios que se les ocasionaron con la muerte del esposo y padre, ocurrida, según se sostuvo por los demandantes y se resolvió por la corte de distrito, como consecuencia de la negligencia del demandado.

En la demanda se alegó, en resumen, que el Municipio de Arecibo—el demandado—mantiene y explota un sistema eléctrico de luz y fuerza que suministra corriente a casas particulares en el barrio de Hato Abajo, por medio de una línea general que se extiende a lo largo de la carretera de Arecibo a Lares con carga mayor de ciento diez voltios, suficiente para producir la muerte instantánea de una persona;

Que en y antes del 1 de enero, 1938, Isabel Feliciano estaba casada con Alfredo Matheu habiendo procreado en el matrimonio tres hijos, Luis Emilio, Wilfredo y Jesús Israel, de seis, cuatro y dos años y medio respectivamente;

Que Matheu era un obrero como de treinta años de edad de constitución robusta, saludable, sobrio, que sostenía a su familia con el producto de su jornal cuyo promedio era el de $1.50 diarios;

Que en enero 1, 1938, Matheu se dirigía a su casa a pie por la orilla de la dicha carretera encontrándose al pasar con un alambre que colgaba de un árbol y que obstruía su paso y al tratar de remover el obstáculo tomando el alambre en sus manos sin conocer que estaba cargado de electricidad,

recibió en su cuerpo tan tremenda descarga que cayó al pavimento y murió instantáneamente;

Que esa muerte se debió exclusivamente a la negligencia del demandado al mantener el alambre desnudo y permitir que por largas horas permaneciera colgado de un árbol, sin avisar a los viandantes de la existencia del peligro; y

Que la viuda e hijos demandantes han sufrido perjuicios que estiman en diez mil dólares.

Contestó el demandado negando general y específicamente los hechos de la demanda y alegando como defensa especial que el accidente se debió a los actos realizados por el propio Alfredo Matheu, constitutivos de negligencia crasa.

Fué el pleito a juicio y la corte lo falló como ya indicamos en contra del demandado, condenándolo a pagar a los demandantes dos mil setecientos dólares por daños y perjuicios, más trescientos para honorarios de abogado, ordenando que el importe de la sentencia fuera depositada en la corte para determinar luego la cantidad que debiera someterse a las restricciones de ley sobre bienes de menores.

De la opinión de la corte sentenciadora transcribimos lo que sigue:

"No hay discrepancia en la prueba con respecto a que el municipio opera una planta para el suministro de electricidad, y que el alambre con el cual se puso en contacto el fenecido, pertenecía a una de sus líneas de primarios cargados con alto voltaje.

"La evidencia es contradictoria en cuanto a si el alambre descansaba sobre el árbol y caía en la carretera, en forma que obstruía el tránsito, o si descansaba de un árbol y colgaba hasta muy bajo sobre la cuneta de la referida carretera. Uno de los testigos de la parte demandada declaró que cuando él llegó al sitio y cortó el alambre, éste se encontraba, en parte, en la carretera, y que el cuerpo de Matheu estaba parte en el pavimento y parte hacia la cuneta.

". . . . En la vista del caso se insistió por la parte demandada en el hecho de que el alambre no obstruía el paso del perjudicado, y que el acto de tocarlo fué innecesario y vicioso, constituyendo una negligencia, que a juicio del municipio, le exime de responsabilidad.

"La caída de un alambre primario en las circunstancias que presenta este caso, a falta de prueba sobre fuerza mayor, consti-

tuye negligencia de la entidad que opera la planta, pues tal descuido expone a peligro de muerte, no sólo al que transita por la vía pública, sino a los peones camineros que trabajan en la cuneta de la carretera. La teoría de *res ipsa loquitur* es aplicable.

"Aun si diéramos crédito a la declaración de algunos testigos de la parte demandada, con respecto a que el alambre no obstruía el paso por la carretera, que sólo colgaba hasta muy bajo sobre la cuneta y no encima del pavimento, la conclusión a que hemos llegado siempre sería la misma.

"Al transitar una persona por el paseo de una carretera, puede por impulso instintivo alargar su mano para tocar un alambre o cualquier otra cosa, que descansando en un árbol, vea colgando sobre la cuneta, que es parte del terreno público. No es el caso de uno que cruza del camino a una propiedad privada para ir a tocar cosas que están en alguna forma reservadas al uso exclusivo del propietario, o que siendo públicas están aisladas.

"A falta de un aviso o conocimiento previo, no se presume que un transeúnte, en tales circunstancias, pudo anticipar el riesgo o peligro que implicaba el acto innecesario de tocar el alambre. Por instinto natural de propia conservación, hay que presumir lo contrario. Aun cuando su conducta contribuya al fin desgraciado, la causa próxima debe atribuirse a la negligencia que la ley deduce, de aquél que mantiene un peligro al alcance del viandante.

"Alfredo Matheu dejó una viuda joven y tres hijos menores, que a juzgar por su edad, tenían larga esperanza de ayuda del padre, de quien se habló en el juicio, como hombre trabajador, de buena salud."

No conforme el Municipio demandado apeló para ante esta Corte Suprema. Señala en su alegato cuatro errores cometidos a su juicio por la corte de distrito al aplicar al caso la doctrina de *res ipsa loquitur,* al no resolver que la causa próxima del accidente fué la negligencia contributoria crasa del demandado, al pesar la evidencia y hacer conclusiones contrarias a derecho y al fijar la indemnización y las costas.

Para llegar a la conclusión de que no es aplicable la doctrina de *res ipsa loquitur* se basa el apelante en que fueron sus testigos los que dijeron la verdad y coloca el alambre fuera de la carretera más allá aún de la cuneta y al causante de los demandantes, mecánico, con conocimientos de

electricidad, ebrio, caminando acompañado de un amigo y agarrando el alambre sin necesidad alguna a sabiendas del riesgo que corría, y entonces concluye que la negligencia del dicho causante, fué de tal manera crasa que hacía imposible la aplicación de la máxima. Cita 45 C. J. 1209, sec. 777. Sostiene que no conocía la caída del alambre y que no tenía obligación alguna contraída para con Matheu. Se apoya en 45 C. J. 1207, sec. 775.

Las citas dicen. La primera:

"Sujeto a las reglas referentes a la naturaleza de un suceso casual que justificaría la aplicación de la doctrina, el mero hecho de que un accidente ha ocurrido en la propiedad del demandado, no establece una presunción de negligencia de su parte. Además, se ha sostenido que para poder aplicar la doctrina, debe aparecer que la persona lesionada se hallaba en un lugar en donde tenía derecho a encontrarse, y que la doctrina no puede ser invocada para crear una presunción de negligencia cuando el demandado se halla en la obligación de evitar la negligencia afirmativa o activa, tal como la que es imputable a un transgresor, o a alguna persona en su propiedad, por razón de aquiescencia meramente pasiva, por un permiso escueto (*naked license*) o por una invitación implícita." 45 C. J. 1209, sec. 777.

Y la segunda:

"Como la existencia de negligencia procesable y la responsabilidad inherente a ella, dependen del incumplimiento de una obligación legal de proceder cuidadosamente, no puede desde luego, tener aplicación la doctrina de *res ipsa loquitur* a menos que el demandado en el caso particular tuviere tal obligación respecto al demandante. Además, y de conformidad con las reglas respecto a la naturaleza de un accidente, que justificaría la aplicación de la doctrina, las circunstancias que crean la obligación de emplear cautela deben ser tales que impongan esta obligación al demandado exclusivamente, pues la regla no puede ser aplicada en forma que establezca una presunción en contra de un demandado, cuando las partes envueltas se hallaban ambas en el ejercicio de un igual derecho en la ocasión de autos, y se hallaban sujetas a observar igual medida de precaución para evitar el infligir o recibir lesiones." 45 C. J. 1207, sec. 775.

Aunque el juez del distrito no resolvió el conflicto de la evidencia de modo expreso y terminante en favor de la de los demandantes, el tono de su opinión indica con bastante claridad que a ello se inclinó y que se refirió a lo dicho por los testigos del demandado sólo en forma hipotética, a fin de apreciar los hechos del modo más fevorable a los intere- ses del demandado y aun así concluir que era responsable.

Hecha esa aclaración, basta una mera lectura de la juris- prudencia citada para concluir que no es aplicable a este caso.

Hemos estudiado las declaraciones de los testigos de ambas partes y a nuestro juicio es correcto el siguiente resumen que de la del demandante y parte de la del deman- dado contiene el alegato de la parte apelada. Es así:

"La evidencia revela que el día de autos, como a las cinco de la tarde, el interfecto Matheu iba hacia su casa por la carretera que conduce de Arecibo a Lares (R. T., pág. 14, 37); que más acá del nuevo hospital, muy cerca de esta ciudad de Arecibo (R. T., 26, 37) topó con un alambre caído que colgaba de un árbol y que tocaba el suelo (R. T. 14, 18, 19); que al tocar el alambre para recogerlo y echarlo a un lado para pasar, el alambre le transmitió una corriente eléctrica al occiso que le produjo la muerte allí instantáneamente (R. T. 15, 23); que el alambre era uno de los primarios del sistema hidroeléctrico que mantiene y opera el Municipio apelante y estaba en parte insulado y en otras partes no (R. T. 21, 26, 31); que el día de autos era un día claro y normal (R. T., 25); que en aquel sitio no había signo o señal de aviso para prevenir el peligro causado por el alambre (R. T., 19); que el alambre descansaba sobre la carretera, no en una cuneta (R. T. 19); que el interfecto iba por el paseo de la carretera, tomó el alambre en sus manos, y cayó al suelo electro- cutado (R. T. 20)."

La parte no analizada comprende las declaraciones de Quintín Alvarez, que dijo que era celador de líneas del deman- dado, y Julio Martínez, Director de Obras Públicas del Muni- cipio, quienes no presenciaron el accidente.

Manifestó el primero que estando en el Municipio llegó un policía en motocicleta buscando un celador electricista

para que fuera a la carretera donde se había carbonizado un hombre. Montó en la motocicleta con el policía, "llegó al switch y tumbó la corriente." "Los alambres colgaban de los árboles al borde de la cuneta" (T. pág. 41). Cuando llegó no encontró el alambre en la carretera. Cree que no pudo caer a ella. (T. pág. 42.) Si se hubiera encontrado con un alambre tal, siempre que hubiera estado aislado hubiera podido separarlo, pero a mano pelada no. (T. pág. 43.)

Y dijo el segundo que tan pronto como se tuvo noticia, se procedió a arreglar el alambre. Que nada se le avisó antes. Que tiene un empleado dedicado al servicio de observación de la línea (T. pág. 45). Que el empleado hace el servicio cada vez que se necesita. Que la línea de alambres va paralela a la carretera, al lado derecho, hacia las fincas de ese lado. Los postes están en las fincas, no en la cuneta. (T. pág. 46.) Preguntado: "¿No hay ningún hombre que se dedique a inspeccionar?" contestó: "En mi departamento no tengo a ninguno. Solamente esos que hacen de reparadores hacen la inspección." (T. pág. 47.)

Siendo ésa la prueba, no cometió la corte sentenciadora ninguno de los tres primeros errores que se le atribuyen.

En el caso de *Orta* v. *P. R. Railway, L. & P. Co.*, 36 D.P.R. 743, 746, esta corte, por medio de su Juez Asociado Sr. Wolf se expresó como sigue:

"La corte también sostuvo que constituía negligencia por parte de la compañía el tener alambres de alta tensión en sitios muy poblados sin la debida protección y vigilancia, y que esta omisión fué la causa próxima de los daños sufridos por el hijo del demandante. La apelante sostiene que no se demostró la verdadera negligencia de la compañía demandada y que la corte al parecer estaba implícitamente aplicando la doctrina de *res ipsa loquitur*. Sin embargo, con excepción de los casos de Pennsylvania que cita la apelante, la regla prevaleciente en los Estados Unidos es que cuando un alambre de alta tensión cae en una calle pública, causando daño, la doctrina de *res ipsa loquitur* es aplicable.

"Bajo el título Electricidad, en 20 C. J. página 380, pár. 63, encontramos lo siguiente:

" ' (2) *Res Ipsa Loquitur.* La doctrina de *res ipsa loquitur* encuentra aplicación frecuente en los casos sobre electricidad cuando las circunstancias del accidente son tales que crean una presunción o inferencia de negligencia suficiente para destruir el peso que descansa originalmente en el demandante y a menudo para hacer recaer en el demandado el peso de controvertir tal presunción mediante prueba, pero hablando en términos precisos no tiene el efecto de cambiar el peso de la prueba. El hecho de que el demandado conduzca electricidad a determinado sitio; que la electricidad así empleada pueda escaparse en tal forma que produzca daño; y que un daño debido a la electricidad, de hecho ocurra en un sitio donde la parte que lo sufre tiene derecho a estar, se ha resuelto generalmente que constituye un caso prima facie de negligencia. El hecho de que alambres que conduzcan una corriente eléctrica peligrosa se hayan roto o separado de sus postes en la calle o camino y causado daño, se ha resuelto generalmente que crea una presunción de negligencia, aunque hay autoridades que sostienen que la doctrina no es aplicable a tales casos.'

"El texto anterior está sostenido por los casos de (se copian).

"Aunque en el caso de *Rosado* v. *Ponce Railway Light & Power Co.,* supra, no discutimos la jurisprudencia ampliamente, el mismo es una autoridad en Puerto Rico para la aplicación de la doctrina. Los hechos de aquel caso eran enteramente similares a los del presente caso. La apelante también sostiene que la compañía demandada hizo todo lo necesario para proteger al público de la caída de alambres peligrosos. La prueba, como hemos indicado, demuestra que estos alambres no estaban debidamente aislados. La apelante aparentemente descansa en algunas de las manifestaciones de los peritos al efecto de que estos alambres generalmente no están protegidos en forma distinta a la en que la apelante en este caso trató de proteger al público o de aislar sus alambres. La tendencia de todas las autoridades es en sentido contrario.

"*Herbert* v. *Lake Charles Ice & Water Works Co.,* supra; *Colusa Parrot Mining & Smelting Co.* v. *Monahan,* supra; 9 Ruling Case Law 1210, 1211, en donde se dice: 'Debido a la naturaleza misma de este negocio una compañía eléctrica que emplea alambres de alta tensión, tiene, independientemente de cualquier relación contractual, el deber legal hacia toda persona que en el ejercicio de una ocupación legítima, y estando en un lugar donde tiene el derecho legal de encon-

trarse, se halle expuesta a venir en contacto con dichos alambres, de ver que dichos alambres estén debidamente colocados con respecto a la seguridad de tales personas y que estén debidamente aislados'; *ewis's Executors, appellants*, v. *Bowling Green Gas Light Co.*, 22 L.R.A. (N. S.) 1169 y la nota detallada; *Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484, 94 N. E. 206, 34 L.R.A. (N. S.) 1089 y nota, así como algunos de los otros casos citados previamente en esta opinión.

"No encontramos que la apelante cumpliera suficientemente con el deber de explicar cómo cayeron estos alambres, o de relevarse a sí misma de la presunción legal establecida por la doctrina que hemos mencionado."

Aunque los hechos de este caso no son tan fuertes como los del de *Orta,* supra, sin embargo creemos que la misma regla es aplicable.

El demandado mantenía tendidos alambres de alta tensión capaces de producir la muerte de una persona por un sitio en que de romperse podían caer a otro en el que inevitablemente podrían causar daño. Una carretera en su centro, en sus paseos y aún en sus cunetas, es de tránsito público. El alambre en este caso se partió y cayó sobre ella o tan cerca de ella que fué la causa única del daño.

La ruptura del alambre no se debió a fuerza mayor y no fué explicada de modo alguno consistente con la diligencia del demandado. No se demostró que éste inspeccionara periódicamente sus líneas para cerciorarse de su estado. Se limitó a tenderlas en un sitio peligroso y nada más al parecer hizo. Sus empleados reparaban desperfectos. Se esperaba demasiado. Sólo se explica, pues, la ruptura por la negligencia del demandado.

■■ Es cierto que el causante de los demandantes pudo pasar sin ponerse en contacto con el alambre y que si no lo toca, no hubiera muerto, pero su acto contributivo no puede considerarse como la causa próxima del accidente. De no haber caído el alambre en el sitio por donde él pasaba con derecho, nada hubiera ocurrido. Y si iba ebrio, más explicable es su actuación todavía, sin que pueda sostenerse que

548

por el hecho de encontrarse un hombre ebrio pierda su derecho a usar de los caminos públicos en toda su extensión.

Es quizá éste un caso extremo, pero a nuestro juicio continúa en él predominando como la verdadera causa del daño la falta del cumplimiento por parte del demandado del claro deber que se impuso al tender sus líneas peligrosas tan cerca de una vía pública, de mantenerlas en el debido estado de conservación.

Tampoco creemos que el último de los errores señalados fuera cometido. El causante de los demandados era un hombre joven aún que trabajaba y ganaba y los demandantes dependían de él para su subsistencia. Dos mil setecientos dólares no es una indemnización en tal caso excesiva. Tampoco está injustificado el pronunciamiento sobre honorarios de abogado. Trescientos dólares constituyen una cantidad razonable como compensación de los servicios del abogado atendido el tiempo que empleara y el esfuerzo mental que realizara en la dirección del litigio.

*Debe confirmarse la sentencia apelada.*