JUANITA MACHUCA VDA. DE DURAND, por sí y en representación de sus menores hijas GLADYS y ELSA DURAND Y MACHUCA, demandantes y apeladas, v. LA AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y apelante.

Núm. 9201.—*Sometido:* Febrero 6, 1946.   *Resuelto:* Mayo 24, 1946.

*James E. Curry, Gabriel Guerra-Mondragón, Antonio M. Bird y José Vilá Ruiz,* abogados de la apelante; *J. Alemañy Sosa,* abogado de las apeladas.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

La demandada apela de la sentencia que lo condenó a pagar a las demandantes la suma de $5,000 en concepto de

daños y perjuicios, las costas y $300 para honorarios de abogado. Los hechos son los siguientes:

Allá para el 14 de octubre de 1943 el Negociado del Tiempo informó que un ciclón pasaría por la parte occidental de la isla afectando posiblemente la ciudad de Mayagüez. Desde un poco antes del mediodía de dicho día se empezaron a sentir en dicha ciudad fuertes vientos acompañados de aguaceros. Como consecuencia del viento las líneas de la compañía demandada se rompieron en algunos sitios comenzando a hacer contacto unas con otras lanzando chispas de fuego y ocurriendo varios conatos de incendio en la ciudad. Varias comisiones de entidades cívicas visitaron la planta eléctrica solicitando la suspensión del servicio eléctrico para evitar la alarma de la población y otros conatos de incendio, pero fueron informados que la estación local de la demandada tenía que esperar órdenes superiores para poder descontinuar el servicio. Finalmente a la caída de la tarde se suspendió el servicio eléctrico pero fué continuado después de un intervalo de tiempo ocurriendo otros conatos de incendio.

Como a las nueve de la noche se anunció un incendio en el barrio "Balboa", de Mayagüez, dirigiéndose allí la bomba de incendios número tres. En aquel sitio había dos alambres de la demandada caídos sobre un árbol de almendro, como a doce pies del suelo que lanzaban chispas de candela al moverse con el viento. José Vicente Durand que fué al sitio con los bomberos, se acercó al árbol con un machete, y al tocarlo con su mano izquierda murió electrocutado. Durand era dependiente de la tienda de calzado "La Favorita" y había sido miembro de la Defensa Civil y a pesar de que en el momento en que ocurrió su muerte no era un miembro de jure de dicha organización, había continuado en sus funciones de bombero auxiliar, según había sido designado por la Defensa Civil, con el beneplácito y aquiescencia de los jefes del cuerpo de bomberos.

La viuda instó la presente acción de daños y perjuicios por sí y en representación de sus menores hijas habidas en su matrimonio con el interfecto. La demandada alegó negligencia contribuyente por parte del interfecto y la Corte de Distrito de Mayagüez dictó la sentencia a que hemos hecho referencia.

La demandada interpuso el presente recurso y señala los siguientes errores:

I.—La corte inferior cometió manifiesto error en la apreciación de la evidencia al determinar:

(a) que apenas hubo interrupción en el servicio eléctrico, y

(b) que no se hizo inspección alguna antes de restablecerse el servicio.

II.—La corte inferior cometió manifiesto error al sostener que la causa próxima del accidente fué la culpa y negligencia de la demandada y no el acto imprudente y temerario del causante de las demandantes.

El primer señalamiento, en sus dos apartados, carece de méritos. Si la interrupción en el servicio, por la tarde, fué larga o corta, en nada varía la cuestión primordial envuelta en este caso ya que la propia demandada admitió que el causante de las demandantes murió como consecuencia de electrocución causada por una de sus líneas y que al momento de ocurrir la muerte, por la noche, el servicio de electricidad estaba conectado de nuevo. En cuanto a que no se hizo inspección alguna antes de restablecerse el servicio nada encontramos en la prueba que demuestre que las líneas se inspeccionaron o repararon durante el tiempo en que se interrumpió el servicio por la tarde. La prueba de la propia demandada lo que demostró fué que mientras estaba conectado el servicio había una brigada de hombres inspeccionando las líneas y arreglando las averías simples; que cuando se suspendió el servicio se citó a todo el personal para una reunión por la noche para determinar la forma de

hacer las inspecciones, al día siguiente; que en esa misma reunión el ingeniero Gandía propuso se probara si podía alumbrarse al pueblo y así se hizo, sin que se hubiera realizado ninguna inspección y en esa forma se mantuvo la corriente a pesar de saber que habían ocurrido averías que no habían sido inspeccionadas ni localizadas. En otras palabras, la inspección y reparación de averías simples se realizó antes de la interrupción del servicio y antes de terminar el temporal. Esto no obstante, se restableció la corriente sin determinar si existía o no peligro. La prueba sostiene las conclusiones a que llegó la corte. No se cometió, pues, el primer error señalado. Veamos si se cometió el segundo.

La prueba demuestra que la demandada fué negligente. No obstante tener conocimiento de que sus líneas habían sufrido averías y que se habían ocasionado conatos de incendio con dicho motivo, reconectó la corriente en sus líneas. Que tuvo conocimiento de las averías ocurridas lo demuestra no sólo las declaraciones de los testigos de las demandantes, el Alcalde Barreto y el Representante Báez, sino el testimonio de su propio empleado Sr. Francisco Piñeiro, que tenía a su cargo la operación del cuadro de distribución en la planta de la demandada, y declaró que según aumentaba el temporal los *switches* del cuadro se caían y había que volverlos a poner; que los switches se caen cuando hay un cruce de líneas que puede ser ocasionado por un árbol o gancho de árbol al caer sobre los alambres o cuando un alambre roza con otro; que los switches se cayeron muchas veces "y ya últimamente llegó el momento en que se caían y los ponía, pero no se aguantaban más por sí solos" porque "el *switch* puede aguantarse cuando por ejemplo un ramo cae momentáneamente sobre el alambre. El switch se cae, pero se pone y muchas veces se aguanta. Pero una vez que hay un cruce perfecto, por más que se ponga el switch no se aguanta"; explicó que cuando trabajaba para la Maya-

güez Light (antecesora de la demandada) tenía órdenes de que cuando un switch se caía tres veces no conectarlo más.

. A pesar de que las caídas constantes de los switches demostraban que habían cruces perfectos y averías en las líneas, la demandada después de haber desconectado el servicio por dos o tres horas, volvió a conectarlo sin haber inspeccionado sus líneas ni haber reparado dichas averías. No se hizo nada por constatar si al restablecerse la corriente existía o no peligro aun cuando debió darse cuenta de que sí lo había porque, de nuevo, según demuestra la prueba, los switches no se sostenían y comenzaron nuevas llamadas por teléfono avisando de otros cortos circuitos y conatos de incendio. A pesar de esto, la demandada mantuvo la corriente hasta el momento en que tuvo conocimiento de la muerte del causante de las demandantes. Entonces fué que desconectó el servicio por completo hasta la mañana siguiente.

Una compañía que actúa en la forma en que lo hizo la demandada en el caso de autos incurre en negligencia y es responsable si con motivo de su actuación causa daños. Era el deber de la demandada, por los avisos de las comisiones que visitaron la planta y por la advertencia que constantemente le estaban dando sus propios aparatos mecánicos, los switches, no sólo haber desconectado la corriente en sus líneas, sino haberlas inspeccionado y reparado en aquellos sitios donde habían ocurrido averías antes de conectarla de nuevo. El no haberlo hecho ocasionó el fuego en el Barrio Balboa al caer dos alambres de la demandada sobre un árbol, quedar colgando a doce pies del suelo y transmitir la corriente que por ellos enviaba al tronco del árbol.

Arguye la apelante que la rotura de los alambres se debió a fuerza mayor y por ese hecho no es responsable. Cierto es que las averías en sus líneas se debieron al temporal, empero, la negligencia de la demandada surgió con posterioridad a dicho hecho, es decir, por no haber desconectado la corriente a pesar de tener conocimiento pleno del

peligro que existía de continuar transmitiendo dicha corriente por sus líneas sin haberlas inspeccionado y reparado. Si debido a la premura del tiempo o por cualquier otro motivo no podía hacer esto último debió haber desconectado el servicio hasta que pudiera hacerlo. La vida y seguridad de los habitantes de la ciudad de Mayagüez así lo requerían.

Sostiene la demandada que la negligencia contribuyente del causante de las demandantes fué la causa próxima de su muerte. La demandada trató de probar que Durand estaba en estado de embriaguez y que asumió el riesgo de tocar el árbol, a sabiendas o debiendo saber, que por estar mojado, era conductor de la corriente eléctrica. Empero, la corte inferior no dió crédito a su prueba y resolviendo el conflicto que en la de ambas partes existe sobre la forma en que ocurrió el accidente se expresó así:

" . . . que el expresado José Vicente Durand, que aunque ya no era un miembro 'de jure' de la Defensa Civil como Inspector de Bombas lo había sido hacía poco tiempo antes asignándosele a servir en el Cuerpo de Bomberos, y había continuado prestando sus servicios a dicho Cuerpo con la aquiescencia y beneplácito de los jefes del mismo, como a las 9:00 de la noche de dicho día acompañó a una brigada de bomberos a extinguir un incendio que se informó que existía en el barrio Mayagüez Arriba, lugar conocido por la Quinta o Balboa, de esta ciudad de Mayagüez, y que mientras se encontraba allí en servicio con los bomberos, al descansar una mano sobre un árbol que se estaba quemando y levantar un machete que tenía en la otra parece que con intención de cortar dicho árbol, o una rama que colgaba del mismo, quedó muerto por efecto de la corriente que comunicaban a dicho árbol los alambres de las líneas de la demandada que se habían roto y descansaban sobre una horqueta de dicho árbol, la que estaba como a 12 pies de la tierra donde estaba parado el señor Durand.

"El señor Durand se encontraba en aquel momento ocupando un sitio en el que tenía derecho a estar, estaba en estado normal, y no lo animaba otro fin en su labor que no fuera el de servicio desinteresado a la comunidad.

"     *          *          *          *          *          *          *

"La defensa de negligencia contribuyente por parte del interfecto que se alega en la contestación, no considera la Corte que exista en

este caso prueba de hechos que la justifique . . . Su trabajo era como dependiente en una tienda de calzado. Tampoco existe evidencia de que él tuviera conocimiento del riesgo o peligro que existía para su vida al tocar el árbol. El no tocó los alambres cargados de electricidad que estaban mucho más arriba del sitio donde puso su mano sobre el árbol. Quizás él. no estuvo acertado en elegir el remedio de tumbar el árbol para conjurar el peligro que pudiera constituir para la casa más próxima. el fuego que había en el árbol. Pero en forma alguna su acto constituyó una exposición voluntaria a un peligro aparente o real, que era lo que le hubiera hecho incurrir en negligencia contributoria. .

"Sin duda alguna, la causa próxima del accidente fué la culpa y negligencia de la demandada al conectar de nuevo la corriente sin remover las líneas caídas o reparar las averiadas durante la borrasca, asumiendo así el riesgo de los daños que como resultado de su conducta se ocasionaron. Si alguna negligencia hubo por parte del interfecto . . . en nada pudo interferir con la causa próxima del accidente, ni atenuar y menos justificar la conducta de la demandada y su responsabilidad como consecuencia de la misma."

Los casos citados por la apelante se diferencian del de autos por el hecho de que en ellos la negligencia contribuyente del perjudicado quedó demostrada por haber tocado o cogido en sus manos, innecesariamente y a sabiendas, alambres con corriente que se habían roto. Pero es que aun en situaciones como éstas todo depende de los hechos probados en cada caso específico y el crédito que a la corte sentenciadora merezca esta prueba. *Mangual* v. *Municipio,* 63 D. P.R. 147; *Sucn. Matheu* v. *Municipio,* 56 D.P.R. 539.

No erró, a nuestro juicio, la corte inferior al resolver en contra de la demandada la defensa de negligencia contribuyente.

*Debe confirmarse la sentencia apelada.*